## LOCAL NO. 438 CONSTRUCTION & GENERAL LABORERS' UNION, AFL–CIO, v. CURRY ET AL., DOING BUSINESS AS S. J. CURRY & CO.

No. 87.   Argued November 7–8, 1962.—Decided January 21, 1963.

*John S. Patton* and *Edwin Pearce* argued the cause and filed briefs for petitioner.

*Robert B. Langstaff* argued the cause for respondents. With him on the brief was *H. H. Perry, Jr.*

Mr. Justice White delivered the opinion of the Court.

In the face of petitioner's claim that the subject matter of this suit was within the exclusive jurisdiction of the National Labor Relations Board, the Supreme Court of Georgia reversed the denial by the trial court of a temporary injunction sought by respondents. 217 Ga. 512, 123 S. E. 2d 653. We granted certiorari to consider the jurisdiction of the Georgia court to authorize the entry of an injunction and requested the parties to brief also the question of our own jurisdiction to review the Georgia court's judgment under 28 U. S. C. § 1257. 369 U. S. 883.

Respondents, partners in the contracting business, entered into a construction contract with the City of Atlanta requiring that wages paid by respondents "conform with those being paid on similar types of work in

the Atlanta area." Shortly after the beginning of construction, various unions in the Atlanta area visited respondents, whose practice it was to hire without regard to union membership and whose employees were not represented by a union. According to respondents the unions strongly urged the hiring of union labor, whereas the unions recalled only their request for respondents to raise their pay scales to those prevailing in the area. Some months later, following unsuccessful efforts by the unions to have the City of Atlanta persuade respondents to pay higher wages, petitioner placed a single picket at the construction site. Thereupon employees of other contractors not under respondents' supervision refused to work and respondents experienced difficulty in having materials and supplies delivered. Construction slowed, respondents laid off all but 37 of the 72 men working for them, and their ability to finish the job within the time provided in the contract was jeopardized.

Respondents then brought this action for an injunction in the Superior Court of Fulton County, Georgia, alleging that petitioner's picketing was for the purpose of forcing respondents to hire only union labor, all in violation of the Georgia right-to-work statute.[1] A hearing upon respond-

---

[1] The Georgia right-to-work law, Ga. Code, § 54–804, provides:

*"Compelling persons to join, or refrain from joining, labor organization, or to strike or refrain from striking.*—It shall be unlawful for any person, acting alone or in concert with one or more other persons to compel or attempt to compel any person to join or refrain from joining any labor organization, or to strike or refrain from striking against his will, by any threatened or actual interference with his person, immediate family, or physical property, or by any threatened or actual interference with the pursuit of lawful employment by such person, or by his immediate family."

The Georgia Supreme Court also referred to Ga. Code, § 66–9906, which provides:

*"Unlawfully preventing laborers, etc., from performing duties.*— Any person or persons, who, by threats, violence, intimidation, or

ents' request for a temporary injunction was held. According to the union its picketing was for the sole purpose of publicizing the facts about the wages being paid by respondents, and in any event its activities were claimed to be within the exclusive jurisdiction of the National Labor Relations Board. It was stipulated that respondents had purchased more than $50,000 worth of goods and commodities from outside the State of Georgia.[2] The temporary injunction was denied without opinion and respondents appealed. The Georgia Supreme Court found the picketing to be peaceful and the evidence sufficient to sustain a finding that respondents were not paying wages conforming with those paid on similar types of work in the Atlanta area. Relying upon and quoting from an earlier case, the court nevertheless concluded on the whole record that the picket was placed on the job for the purpose of forcing the employer "to employ only union labor, or be unable to comply with the terms of his contract . . . such picketing is for an unlawful purpose, and clearly a violation of the provisions of *Code Ann. Supp.* § 54–804 . . . ."[3] The judgment of the court was that "the trial judge erred in refusing the interlocutory injunction," this judgment later being entered upon the minutes of the trial court and made the judgment of that court.

---

other unlawful means, shall prevent or attempt to prevent any person or persons from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, shall be guilty of a misdemeanor."

[2] Although respondents point out that there has been no judicial determination of effect on interstate commerce, we do not understand that they question the accuracy or validity of the stipulation or that their purchases from outside Georgia meet the direct inflow standards set by the NLRB for the exercise of its jurisdiction. See Twenty-Third Annual Report, National Labor Relations Board, p. 8 (G. P. O., 1958).

[3] 217 Ga., at 514, 123 S. E. 2d, at 655, quoting from *Powers* v. *Courson*, 213 Ga. 20, 96 S. E. 2d 577.

Upon such a record, we hold that this Court has appellate jurisdiction under § 1257 and we reverse the judgment below as beyond the power of the Georgia courts. The allegations of the complaint, as well as the findings of the Georgia Supreme Court, made out at least an arguable violation of § 8 (b) of the National Labor Relations Act, 29 U. S. C. § 158 (b).[4] Consequently, the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the

[4] Sections 8 (b) (1) (A), 8 (b) (2), 8 (b) (4) (B), and 8 (b) (7) (C) provide, in pertinent part:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 . . . ;

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

.     .     .     .     .

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

.     .     .     .     .

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9:

National Labor Relations Board. *Plumbers Union* v. *Door County,* 359 U. S. 354, 359; *San Diego Council* v. *Garmon,* 359 U. S. 236, 244–245; *Hotel Employees Union* v. *Sax Enterprises, Inc.,* 358 U. S. 270; *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 478, 481; *Garner* v. *Teamsters Union,* 346 U. S. 485, 489–491. Nor is the jurisdiction of the Georgia courts sustainable, as respondents urge, by reason of the Georgia right-to-work law and by § 14 (b) of the National Labor Relations Act, 29 U. S. C.

---

*Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

. . . . . .

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

. . . . .

"(C) where such picketing has been conducted without a petition under section 9 (c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* . . . That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

"Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8 (b)."

See also *Meat Cutters Local 427* v. *Fairlawn Meats, Inc.,* 353 U. S. 20, 23; *Radio Union* v. *Labor Board,* 347 U. S. 17, 40–42, 52–53; *Labor Board* v. *Local Union No. 55,* 218 F. 2d 226, 232 (C. A. 10th Cir.).

§ 164 (b). This precise contention has been previously considered and rejected by this Court. *Local Union 429* v. *Farnsworth & Chambers Co.*, 353 U. S. 969, reversing 201 Tenn. 329, 299 S. W. 2d 8. The Georgia Supreme Court clearly exceeded its power in authorizing the issuance of a temporary injunction.

Respondents would nevertheless have us dismiss this case as beyond our appellate jurisdiction since 28 U. S. C. § 1257 limits our authority to the review of final judgments of state courts and since the Georgia Supreme Court authorized the issuance of only a temporary injunction, thus leaving a permanent order still to be issued after further hearings in the trial court. But we believe our power to review this case rests upon solid ground. The federal question raised by petitioner in the Georgia court, and here, is whether the Georgia courts had power to proceed with and determine this controversy. The issue ripe for review is not whether a Georgia court has erroneously decided a matter of federal law in a case admittedly within its jurisdiction (compare *Gibbons* v. *Ogden,* 6 Wheat. 448) nor is it the question of whether federal or state law governs a case properly before the Georgia courts. Compare *Local 174* v. *Lucas Flour Co.,* 369 U. S. 95. What we do have here is a judgment of the Georgia court finally and erroneously asserting its jurisdiction to deal with a controversy which is beyond its power and instead is within the exclusive domain of the National Labor Relations Board.

Whether or not the Georgia courts have power to issue an injunction is a matter wholly separate from and independent of the merits of respondents' cause. The issue on the merits, namely the legality of the union's picketing, is a matter entirely apart from the determination of whether the Georgia court or the National Labor Relations Board should conduct the trial of the issue.

The jurisdictional determination here is as final and reviewable as was the District Court's decision in *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541, exempting plaintiffs in a stockholder's suit filed in a federal court from filing a bond pursuant to a state statute. That ruling was held a final judgment under 28 U. S. C. § 1291 even though the trial in the case was still to take place. The judgment before us now, like the judgment in *Cohen,* falls "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction." *Id.,* at 546. And in *Radio Station WOW* v. *Johnson,* 326 U. S. 120, the authority of the Nebraska courts to award relief assertedly within the exclusive power of the Federal Communications Commission was held separable from the accounting which was still to take place in the state courts.[5] "In effect, such a controversy is a multiple litigation allowing review of the adjudication which is concluded because it is independent of, and unaffected by, another litigation with which it happens to be entangled." *Id.,* at 126.[6]

There is no doubt that the jurisdiction of the Georgia courts has been finally determined by the judgment below

---

[5] The Court granted certiorari "because of the importance of the contention that the State court's decision had invaded the domain of the Federal Communications Commission" and directed attention to the question of whether or not the judgment of the Nebraska court was a final one. 326 U. S., at 123.

[6] This, of course, was consistent with and followed older cases recognizing a judgment as final even though an accounting was still to take place. *Forgay* v. *Conrad,* 6 How. 201; *Carondelet Canal Co.* v. *Louisiana,* 233 U. S. 362.

and is not subject to further review in the state courts. *Lankford* v. *Milhollin,* 201 Ga. 594, 599, 40 S. E. 2d 376, 379; *Smoot* v. *Alexander,* 192 Ga. 684, 686, 16 S. E. 2d 544, 545; *Dixon* v. *Federal Farm Mtg. Corp.,* 187 Ga. 660, 661, 1 S. E. 2d 732, 733; *Blackwell* v. *Southland Butane Co.,* 95 Ga. App. 113, 115, 97 S. E. 2d 191, 192. Unless this judgment is reviewable now, petitioner will inevitably remain subject to the issuance of a temporary injunction at the request of the respondents and must face further proceedings in the state courts which the state courts have no power to conduct. If the permanent injunction issues, petitioner could then come here seeking the doubtful privilege of relitigating the entire matter before the National Labor Relations Board. The truth is that authorizing the issuance of a temporary injunction, as is frequently true of temporary injunctions in labor disputes, may effectively dispose of petitioner's rights and render entirely illusory his right to review here as well as his right to a hearing before the Labor Board. The policy of 28 U. S. C. § 1257 against fragmenting and prolonging litigation and against piecemeal reviews of state court judgments does not prohibit our holding the decision of the Georgia Supreme Court to be a final judgment, particularly when postponing review would seriously erode the national labor policy requiring the subject matter of respondents' cause to be heard by the National Labor Relations Board, not by the state courts.

There is another entirely adequate reason for sustaining our authority to review in this case. In *Pope* v. *Atlantic Coast Line R. Co.,* 345 U. S. 379, 382, the Georgia Supreme Court reversed the order of a trial court sustaining a general demurrer to a suit to enjoin an employee from prosecuting a suit against his employer in the Alabama courts under the Federal Employers' Liability Act. The demurrer had raised the provisions of the federal statute

as a bar to the power of the Georgia courts to issue the injunction. The Georgia court's denial of this federal claim was held reviewable here although ordinarily the overruling of a demurrer is not a final judgment. This Court looked to the whole record, as we are entitled to do in determining questions of finality, *Department of Banking* v. *Pink*, 317 U. S. 264, 268; *Gospel Army* v. *Los Angeles*, 331 U. S. 543, 547; *Richfield Oil Corp.* v. *State Board of Equalization*, 329 U. S. 69, 72, and concluded that for all practical purposes the litigation in the Georgia courts was terminated, since the employee freely conceded he had no further defenses to offer in the state courts, relying upon *Richfield Oil Corp.* v. *State Board of Equalization*, 329 U. S. 69.

We have a quite similar situation here. The Georgia Supreme Court not only finally asserted its power to deal with the subject matter of this suit, but it also resolved the merits of the issues raised in the course of the hearing upon the temporary injunction. Petitioner's conduct was adjudged to be in violation of the Georgia right-to-work law and an injunction was authorized. Petitioner conceded before this court that he had no further factual or legal issues to present to the Georgia trial court and respondent does not suggest that the matters adjudicated by the Georgia Supreme Court are not final and conclusive upon petitioner and the lower court.[7] Since there was nothing more of substance to be decided in the trial court, the judgment below was final within the meaning of 28 U. S. C. § 1257 and within the scope of the *Pope* and *Richfield* cases. Cf. *Clark* v. *Williard*, 292 U. S. 112.[8]

---

[7] See cases cited in text, *ante*, p. 550.

[8] According to respondents, they urgently desire to litigate at the hearing upon a permanent injunction the question of whether they violated their contract with the city, which in their view the Georgia

There remains the matter of *Montgomery Building &*
*Construction Trades Council* v. *Ledbetter Erection Co.,*
*Inc.,* 344 U. S. 178, where the Court applied the salutary
and long-standing rule that decisions upon interlocutory
injunctions are not final judgments.  *Ledbetter,* of course,
was decided before *Garner* v. *Teamsters Union,* 346 U. S.
485, and subsequent pre-emption cases [9] in this Court,
and at a time when the respective jurisdiction of the
National Labor Relations Board and the state courts
was a much mooted issue.  Moreover, the Alabama court
did not pass upon the merits of the injunction claim, the
union there had withdrawn an answer which controverted
important allegations of the complaint, and it was not at
all clear that there was nothing left to be litigated in the
Alabama trial court.  This Court apparently preferred
to avoid deciding this important matter of federal and
state relationships where the decision below did not have
all of the traditional badges of finality.  Cf. *Republic*
*Natural Gas Co.* v. *Oklahoma,* 334 U. S. 62.  In any
event, however, to the extent that *Ledbetter* may be said
to prohibit our review of a final and erroneous assertion
of jurisdiction by a state court to issue a temporary
injunction in a labor dispute, when a substantial claim is
made that the jurisdiction of the state court is pre-empted
by federal law and by the exclusive power of the National
Labor Relations Board, we decline to follow it.

The judgment is

*Reversed.*

---

Supreme Court did not squarely decide.  But in view of the charac-
terization of the picketing by the Georgia Supreme Court as being
for the purpose of coercing the hiring of only union labor, it is still
true that as far as petitioner is concerned, there is nothing more of
substance to be litigated in the trial court.

[9] *E. g., San Diego Council* v. *Garmon,* 359 U. S. 236, and cases cited
in text, *ante,* p. 547.

MR. JUSTICE HARLAN, concurring in the result.

I join in the determination that we have appellate jurisdiction in this case, and in the reversal of the judgment below. But I believe that the approach taken by the Court to the question of "finality" is far broader than the case demands, or than precedent and policy would warrant.*

At least until today, none of this Court's decisions could be interpreted to suggest that a state court's determination as to state versus federal jurisdiction could, without more, be considered a final judgment subject to our review when further proceedings on the merits were still pending. Indeed, *Montgomery Building & Construction Trades Council* v. *Ledbetter Erection Co.,* 344 U. S. 178, held expressly to the contrary, despite the fact that the determination of jurisdiction had been coupled, as in the present case, with the issuance of a temporary injunction. In *Ledbetter,* as here, it was claimed that the temporary injunction might well have the practical effect of mooting the underlying dispute, thereby aborting any review of the jurisdictional issue.

Neither *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, nor *Radio Station WOW, Inc.,* v. *Johnson,* 326 U. S. 120, lends support to the view that a determination of jurisdiction at this stage, simply by virtue of its separability from the rest of the case, can be deemed a final judgment. For here, unlike *Cohen,* the question now raised would be merged in the final judgment and would be open to review by this Court at that time. And unlike *Radio Station WOW,* where the subsequent state proceedings could not moot the controversy sought to be brought

---

*My views in this area are more fully set forth in the dissenting opinion I have filed in *Mercantile National Bank* v. *Langdeau, post,* p. 572.

before the Court, a victory for this petitioner in the permanent injunction proceedings would effectively dispose of the entire case.

In any event, there is no need to strain these precedents to the breaking point, since as the Court itself recognizes (*ante*, p. 550), "There is another entirely adequate reason for sustaining our authority to review in this case." During oral argument before the Court, petitioner conceded that in any proceedings on the issuance of a permanent injunction, it would have nothing left to litigate. In other words, the state courts having decided that they had jurisdiction and that the picketing was for an unlawful purpose, the petitioner would have nothing further to offer on these or any other issues, and the issuance of a permanent injunction would follow as a matter of course.

It being clear that the entire case must stand or fall on the federal claim now presented, the case is squarely governed by *Pope* v. *Atlantic Coast Line R. Co.*, 345 U. S. 379. Since what remains to be done is only a formality, the judgment sought to be reviewed is final in every significant sense. No such showing was made in *Ledbetter*, *supra*, and the case is readily distinguishable on this ground. No doubts should be cast on the vitality of *Ledbetter*; still less should it be overruled.