23292. ARMSTRONG CORK COMPANY v. JOINER et al.

ARGUED DECEMBER 14, 1965—DECIDED FEBRUARY 2, 1966—
REHEARING DENIED FEBRUARY 23, 1966.

*Bloch, Hall, Groover & Hawkins, Ellsworth Hall, Jr.,* for appellant.

*Gilbert, Patton & Carter, Thomas L. Carter, Jr.,* for appellees.

ALMAND, Justice. This is an appeal from an order in the trial court sustaining the defendants' plea to the jurisdiction and denying the plaintiff's request for an interlocutory injunction. This case was initiated when Armstrong Cork Company, hereinafter referred to as the appellant, brought a petition in the Bibb Superior Court against Robert W. Joiner, John T. Shaw, Jr., the International Association of Bridge, Structural & Ornamental Iron Workers Local 387 and Grady C. Gable, all of whom are hereinafter referred to as the appellees. The petition alleged that the appellees conspiring together and acting jointly on or about May 31st, 1965, were involved in certain picketing at appellant's Macon, Georgia, plant. The picketing was directed against Georgia Steel Erectors which appellant's petition

identifies as a prime and secondary contractor performing construction work at appellant's plant. There were other contractors engaged in this construction work, but the signs carried by those engaged in the picketing read as follows: "Notice to Public: Georgia Steel Erectors unfair to organized labor." The picketing was at first carried on at the two main gates of the appellant's plant, and as a result, the employees of the other contractors and subcontractors refused to cross the picket lines and construction came "substantially" to a halt. On June 4th, 1965, appellant erected a third gate for the use of Georgia Steel Erectors and Macon Prestressed Concrete Company. A picket was placed at this third gate also, and the pickets remained at the two main gates in addition. Appellant's petition alleged that "defendants have deliberately chosen to picket in a manner that will harm your petitioner and the purpose of such picketing is to induce and procure breaches of contract by employees of the other contractors and subcontractors with their respective employers and the contracts between their employers and your petitioner." Appellant also alleged that one Geeslin, an agent and representative of the defendant labor association, had said that "if such employees crossed the picket lines . . . the union would prefer charges against them."

A temporary restraining order was issued preventing the picketing on June 7th, 1965, on the grounds that irreparable harm would be done to appellant before a hearing could be had on appellant's request for a temporary injunction. An attempt by the appellees to remove the case to the United States District Court for the Middle District of Georgia failed. Subsequently, the appellees filed a plea to the jurisdiction of the court alleging that exclusive primary jurisdiction of the subject matter was with the National Labor Relations Board, and thus, the trial court had no jurisdiction to consider the merits of appellant's petition. Other defensive pleadings were filed later by the appellees, but they are not before us at this time. As the result of a hearing on August 19th, 1965, the trial court determined from the evidence presented the following: "(1) The evidence shows that plaintiff, and the other contractors and employers named in the pleadings and in the evidence, and affected by the

picketing were and are engaged in interstate commerce and in an industry affecting interstate commerce within the meaning of the National Labor Relations Act; (2) There is no labor dispute existing between the plaintiffs and the defendants but there is sufficient evidence to establish the existence of a labor dispute as to the non-payment of fringe benefits between defendants and Georgia Steel Erectors; (3) The pleadings and the evidence sufficiently show that defendants were arguably engaged in a secondary boycott prohibited by Section 8 of the National Labor Relations Act; (4) Based upon the foregoing findings the exclusive jurisdiction of the subject matter of this suit is in the National Labor Relations Board and this court is without jurisdiction to adjudicate any of the issues involved in this complaint; and (5) The plaintiff will suffer damages in a substantial amount per day if the defendant union again pickets its plant." The court, upon the foregoing findings, granted appellee's plea to the jurisdiction, denied appellant's prayer for an interlocutory injunction, assessed costs to the appellant and allowed a supersedeas bond to be filed. From this judgment of the court, appellant has brought an appeal assigning numerous grounds of error.

■ Appellant's first assignment of error is upon the court's ruling that its jurisdiction has been pre-empted by the National Labor Relations Act and that exclusive jurisdiction of the subject matter of this case is vested in the National Labor Relations Board. We have carefully read the record, and we conclude from the evidence before the trial court and in light of past decisions of the National Labor Relations Board and the United States Supreme Court which are cited below, the trial court correctly determined that its jurisdiction had been pre-empted.

The Federal statute with which we are concerned is Section 158 (b) (4) (ii) (B) of the Labor Management Relations Act (29 U.S.C.A. § 158 (b) (4) (ii) (B)) which reads in part as follows: "(b) It shall be an unfair labor practice for a labor organization or its agents— . . . (4) . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is— . . . (B) forcing or requiring any person to

cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees. . ." We think that there was sufficient evidence in the trial court to make the foregoing statute applicable to the situation before the court in this case for the following reasons. It appears that Section 158 was enacted for the protection of businesses engaged in interstate commerce which become involved in secondary boycott situations. The National Labor Relations Board has stated as much in one case where a complaint alleged a secondary boycott in violation of Section 158. The board stated in its opinion that "the Trial Examiner apparently concluded that he must, in each instance, find a violation before he could consider, for jurisdictional purposes, the commerce figures of the secondary employers. We do not agree. Under the rules of Jamestown and McAllister cases, where, as here, the primary employer does not meet the board's jurisdictional standard, the board will take into consideration for jurisdictional purposes not only the operations of the primary employer, but also the entire operations of the secondary employers at the locations affected by the alleged conduct involved. The requirement that secondary employers be affected by the conduct involved does not mean that a violation must first be found. It is sufficient that conduct occurred that involved the secondary employer, which conduct must be considered and ruled upon as alleged violations." Madison Bldg. & Construction Trades Council, 134 N.L.R.B. 517, 518. In another case the board stated that "we expressly adopt the interpretation of the Jamestown rule by Member Peterson in his dissenting opinion in the Vann case in which he took the view that it is not the particular business between the primary employer and the secondary employer at the location affected, but rather the entire business of the secondary employer at that location that governs in applying the board's jurisdictional standards in secondary boycott situations." International Brotherhood of Teamsters, 110 N.L.R.B. 1769,

1772. The board in still another case concluded that "in determining whether the board will assert jurisdiction in cases in which secondary boycotts are alleged, we must consider not only the operations of the primary employer, but also the operations of any second employers, to the extent that the latter are affected by the conduct involved." Truck Drivers Local Union No. 649, 93 N.L.R.B. 386, 387. The foregoing board decisions were cited with approval by the United States Supreme Court in the case of Hattiesburg Building & Trades Council v. Broome, 377 U. S. 126 (84 SC 1156, 12 LE2d 172). In a per curiam opinion, the court said: "After finding that the primary employer was not in commerce and ruling that the pre-emption rule . . . was therefore not applicable, the state court enjoined picketing at the premises of the secondary employer. The judgment must be reversed. The jurisdictional standards established by the National Labor Relations Board may be satisfied by reference to the business operations of either the primary or the secondary employer." Id., p. 126. (Citing the foregoing decisions of the board.)

Two decisions of the National Labor Relations Board have set out the applicable jurisdictional standards here. In the first of these, the board said the following: "It will best effectuate the policies of the Act if jurisdiction is asserted over all nonretail enterprises which have an *outflow or inflow across State lines of at least $50,000, whether such outflow or inflow be regarded as direct or indirect.* For the purposes of applying this standard, *direct outflow* refers to goods shipped or services furnished by the employer outside the State. . . *Direct inflow* refers to goods or services furnished directly to the employer from outside the State in which the employer is located." Siemons Mailing Service, 122 N.L.R.B. 81, 85. This criterion was restated in Highway Truck Drivers & Helpers, Local 107, 145 N.L.R.B. 212, 214.

Turning now to the evidence before the trial court, the record contains a stipulation between the parties, the first part of which reads as follows: "1. Armstrong Cork Company, at its Macon plant, regularly produces its products and ships them therefrom to purchasers located out of the State of Georgia, for which ship-

ments Armstrong Cork Company regularly receives annually revenues in excess of one million dollars ($1,000,000) and for which Armstrong Cork Company received in excess of one million dollars ($1,000,000) during the twelve month period immediately preceding the filing of the complaint in this case." This evidence was marked as defendant's exhibit No. 1. In addition, E. A. Worm, Jr., plant manager at Armstrong, testified that the value of the raw materials purchased directly from outside the State of Georgia would exceed $500,000 annually. Mr. Worm also testified that the costs of one of the buildings involved in the construction work, which appellant had alleged had come to a substantial halt, would run in excess of $500,000. The foregoing evidence would appear to form a sufficient basis for the court's finding that its jurisdiction has been pre-empted in light of the standards established for secondary employers by the United States Supreme Court and the National Labor Relations Board.

One other case will illustrate that the case before us is of the type that Section 158 was enacted to cover. In the case of International Union of Electrical, Radio & Machine Workers v. N.L.R.B., 366 U.S. 667 (81 SC 1285, 6 LE2d 592), the complaint alleged a violation of Section 158 (b) (4) (A) which contained the same language as does Section 158 (b) (4) (B) now. The case arose out of a strike against a General Electric plant at the site of which contractors were engaged in certain construction work. General Electric, previous to the strike, had designated a gate marked "3-A" for the use of the employees of independent contractors in order to insulate the plant from the frequent labor disputes in which the contractors found themselves. When the strike began against General Electric, the picketing was carried on at all the gates to the plant in addition to Gate 3-A. Because of the picketing, "almost all of the employees of the independent contractors refused to enter the company premises." Neither the legality of the strike nor the peaceful nature of the picketing was in dispute aside from the picketing at the reserved gate. The court said that "the sole claim is that the picketing before the gate exclusively used by employees of independent contractors was conduct prescribed by § 8 (b) (4) (A) [now § 8 (b) (4) (B)]." Id., p. 670. The trial examiner had recommended

that the complaint be dismissed. The board had ruled "that, since only the employees of the independent contractors were allowed to use Gate 3-A, the Union's object in picketing there was 'to enmesh these employees of the neutral employers in its dispute with the Company,' thereby constituting a violation of § 8 (b) (4) (A) because the independent employees were encouraged to engage in a concerted refusal to work 'with an object of forcing the independent contractors to cease doing business with the Company.' " Id., pp. 670, 671. The court said that "the impact of the section was directed toward what is known as the secondary boycott whose 'sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it.' " Id., p. 672. (Citation omitted.) The court affirmed but for one consideration not present in the case before us upon which it returned the case to the Court of Appeals. We refer to this opinion for the purpose of illustrating the type of activity which Section 158 (b) (4) (B) was enacted to cover. In this respect, the Electrical Workers case referred to is applicable here.

The case of San Diego Building Trades Council v. Garmon, 359 U.S. 236 (79 SC 773, 3 LE2d 775) sets out the criteria for determining whether State jurisdiction has been pre-empted by the National Labor Relations Act. The court said "when it is clear or *may fairly be assumed* that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the Federal enactment requires that State jurisdiction must yield." Id., p. 244. (Emphasis ours.) The court continued, saying, "If the board decides, subject to appropriate Federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction." Id., p. 245. Finally the court said that "at times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board."

Id., pp. 244, 245. "Since the National Labor Relations Board has not adjudicated the status of the conduct . . . and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State's jurisdiction is displaced." Id., p. 246. See also Liner v. Jafco, Inc., 375 U.S. 301 (84 SC 391, 11 LE2d 347).

We are aware of the decisions of this court and the United States Supreme Court in *Curry v. Construction & General Laborers Union,* 217 Ga. 512 (123 SE2d 653), reversed, 371 U. S. 542 (83 SC 531, 9 LE2d 514), and the decision of this court in *United Brotherhood of Carpenters & Joiners v. Briggs,* 218 Ga. 742 (130 SE2d 707), but these cases do not involve the same situation as we now have before us and therefore are not applicable.

In light of the foregoing authority, the allegations of the appellant's petition and the evidence in the record, there was shown an arguable violation of Section 158 (b) (4) (B) of the National Labor Relations Act. The court did not err in determining that exclusive jurisdiction was in the National Labor Relations Board. Since the evidence referred to in this opinion was sufficient to find jurisdiction in the board, it is unnecessary to pass upon the other enumerations of error except one.

■ The second assignment of error is upon the court's denial of an interlocutory injunction as a result of its finding a lack of jurisdiction of the subject matter. The court did not commit error in this regard because "The judgment of a court having no jurisdiction of the . . . subject matter . . . is a mere nullity. . ." *Code* § 110-709.

*Judgment affirmed. All the Justices concur.*