429 F.2d 964
 NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellant,
v.
ROYWOOD CORPORATION, an Alabama Corp. and Hon. Will G. Caffey, Jr., in his capacity as Judge of the Circuit Court in Mobile, Alabama, Defendant-Appellee.
 No. 28378.
 United States Court of Appeals, Fifth Circuit.
 July 13, 1970.
 As Modified on Denial of Rehearing September 11, 1970.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, John I. Taylor, Charles N. Steele, Attys., National Labor Relations Board, Washington, D. C., Charles M. Paschal, Jr., Regional Atty., N. L. R. B., New Orleans, La., for plaintiff-appellant.
 Thomas E. Twitty, Willis C. Darby, Jr., Mobile, Ala., Nicholas S. Hare, Special Asst. Atty. Gen., Montgomery, Ala., for defendant-appellee.
 Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.
 THORNBERRY, Circuit Judge.
 
 
 1
 This is an action by the National Labor Relations Board to have the federal courts remove a state court injunction that the Board argues interferes with its jurisdiction. The case involves a background of strikes, picketing and boycotts with which the Board was intimately concerned. It arises because the employer, dissatisfied with the relief it received under federal law, petitioned the state court for an injunction against "false and defamatory" material that the union was distributing in its efforts to organize primary and secondary boycotts. The state court granted the injunction, whereupon the Board instituted this action for a federal injunction against it. The district court denied relief and left the state court's order standing. We reverse and remand the case with directions to issue the injunction.
 
 
 2
 Roywood Corporation, the Company, operates Television Station WALA-TV in Mobile, Alabama. Local 1264 of the International Brotherhood of Electrical Workers originally represented its employees. In 1965, negotiations for a new agreement failed, and Local 1264 struck. Roywood replaced the striking workers and petitioned the NLRB for a representation election. In this election, which was held in 1967, the striking employees were ineligible to vote because they had been out on strike for more than one year, and the voting employees rejected Local 1264.
 
 
 3
 Notwithstanding this election, Local 1264 continued its picketing and boycott publicity campaign against Roywood. In response, Roywood filed unfair labor practice charges with the NLRB, and the General Counsel, finding the charges meritorious since Local 1264 no longer represented the workers, authorized the issuance of a complaint. Before the complaint issued, however, Local 1264 entered into a settlement agreement with the Board, whereby it agreed to refrain from illegally picketing Roywood or its advertisers. Local 1264 did in fact cease picketing and has not picketed unlawfully since the agreement.
 
 
 4
 Even after the settlement was executed, however, Local 1264 vigorously continued its boycott publicity campaign. It distributed to Roywood's advertisers handbills containing the following language:
 
 
 5
 Nearly two years ago Roywood deliberately "forced" its technicians out on strike and then continued to stall in contract negotiations for over a year, after which time the company called for an NLRB election. Since the technicians had been on strike for over a year, they were not permitted to vote in the election. Therefore, the union was voted out by the strike-breakers.
 
 
 6
 * * * * * *
 
 
 7
 To protect the stations with which we have contracts from unfair competition, we * * * respectfully request your company to refrain from advertising with WALA-TV's NON-UNION operation, and that you place your business with union stations in the area.
 
 
 8
 The union also distributed shorter handbills directed at union members and at the general public, urging them not to trade with merchants who advertised on WALA-TV. One such handbill began with the words, "[This advertiser] is completely aware of the union-busting tactics employed by WALA-TV * * *"
 
 
 9
 In response to these communications, Roywood pursued three separate courses of action. First, it argued to the Regional Director of the NLRB that the union was violating the settlement agreement and sections 8(b) (4) (ii) (B) and 8(b) (7) (B) of the Act. The Regional Office investigated the claim but found that Local 1264's conduct violated neither the settlement agreement nor the Act. Consequently, it informed Roywood that it would not bring a complaint.
 
 
 10
 Secondly, Roywood sued in federal court for damages under section 303 of the Labor-Management Relations Act, which gives employers who are victims of certain unfair labor practices a remedy concurrent to Board action. The district court, in a judgment not here under review, awarded damages to the Company because it found that the union's conduct included illegal picketing and constituted secondary boycott publicity that was neither truthful nor related to a primary dispute.[1]
 
 
 11
 Thirdly, the Company applied to the Circuit Court of Mobile County, Alabama for the injunction that is the subject of this suit. On the same day the application was filed, the court issued an injunction ex parte, directed at James C. Burns, the business agent of Local 1264. The injunction set out the handbills the union had been distributing and prohibited their further publication, and it also directed "James C. Burns and all others in active concert with him" not to "in any other manner * * * publish any false or untrue statement of and concerning Roywood Corporation." Specifically, the court enjoined statements "including, but not limited to any statement directly or indirectly accusing Roywood Corporation of `unfair competition,' or maintaining inferior working conditions for employees of Roywood, or `forcing its technicians out on strike,' and of engaging in `union busting tactics.'" Burns and the union filed a plea in abatement, but the court denied it. It was then that the NLRB filed this action in the federal district court, complaining that Roywood and the Alabama state court had violated the supremacy clause of the Constitution because the injunction regulated conduct preempted by national labor legislation and interfered with the Board's exclusive jurisdiction over the subject.
 
 
 12
 The district court gave two reasons for its denial of relief, both of which the Board challenges on this appeal. First, the court stated that the jurisdiction of the NLRB "has not been invoked," and that consequently no preemption problem arose. Secondly, it held that the anti-injunction statute, 28 U.S.C. § 2283 (1964), prohibited it from enjoining the state court's order because the case was not an "extraordinary" one. We take up the issues in this order.
 
 I. THE PREEMPTION QUESTION
 
 13
 The union's conduct is definitely subject to detailed regulation under the National Labor Relations Act. Initially, the Board's Regional Director found that the union's picket lines violated section 8(b) (4) (B) (the secondary boycott provision) and section 8(b) (7) (B) (the one-year moratorium on recognition picketing after a union has lost a representation election). On the strength of the charge and the Regional Director's treatment of it, the union entered into a settlement agreement that was of material benefit to Roywood. Roywood subsequently petitioned the Board to stop the union's publicity campaign, but the Regional Director found that this conduct was probably exempted from the secondary boycott prohibition because of the statutory language that exempts "publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer."[2] The Regional Director explained his decision to the company and advised it of its right to appeal to the Board's General Counsel, a right the company declined to exercise.
 
 
 14
 Where an activity is arguably protected under section 7 or section 8 of the Act, as the Regional Director indicated the union's conduct in this case was, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S. Ct. 773, 780, 3 L.Ed.2d 775. Federal preemption by the National Labor Relations Act thus extends to concerted labor action arguably protected by sections 7 and 8 and not prohibited by other terms of the Act. As the Supreme Court stated in Garner v. Teamsters etc. Union, 1953, 346 U.S. 485, 499-500, 74 S.Ct. 161, 170-171, 98 L.Ed.2d 228, "detailed prescription of the procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint * * * For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare free picketing for purposes or by methods which the federal Act prohibits." There are numerous cases holding the states precluded from regulating a broad range of labor activities.[3]
 
 
 15
 Moreover, it is quite evident that the granting of injunctive relief against a participant in a labor dispute, as the state court did in this case, is a matter Congress intended to be done only after sensitive procedures have been followed. An injunction in a labor dispute may cause irreparable harm. Use of the injunction as a panacea against strikes and other concerted activity was widespread before the adoption of our national labor legislation, and the devastating effect it had upon labor organizations was one of the strongest reasons for our national laws. In the case of a secondary boycott, as is involved in the case before us, Congress created by section 303 of the Labor Management Relations Act a remedy for private parties concurrent to Board jurisdiction, but it deliberately limited that remedy to damages. Here, Roywood has fully availed itself of its rights under federal law. It has induced the Board to procure a settlement agreement stopping the union from picketing. Appellee has been awarded damages under section 303 for conduct the federal district court found illegal. It now seeks to supplement this complex regulatory scheme by resort to state law that can be construed to impinge upon the labor context. We think it apparent that the balance of forces Congress meant to create in labor disputes will be destroyed unless the decision whether to restrain conduct arguably protected by the Act is left to the expertise of the National Labor Relations Board in a case like this one.
 
 
 16
 Of course, federal preemption does not extend to all actions in which labor organizations or participants in a labor dispute may be engaged. The states are not prevented by federal preemption from regulating conduct of their citizens unless a suit or a method of regulation "would interfere with the national labor policy." See General Motors Corp. v. Mendicki, 10th Cir. 1966, 367 F.2d 66, 71-72. As an example, conduct involving violence is without protection and clearly may be prevented by the states. Indeed, any matter within the local interest of a state or within the traditional regulatory sphere of state power is not preempted if a labor dispute is merely incidentally involved. In particular, state jurisdiction includes suits for libel and slander even if laborrelated conduct is also involved.[4] But these considerations give way when the suit is so closely interwoven with protected activity as to make interference with the national labor policy likely. The Regional Director's judgment that the union's conduct did not amount to an unfair labor practice makes this such a case, since it implies that the secondary boycott campaign was arguably aimed at "truthfully advising the public" of the facts concerning a primary labor dispute.
 
 
 17
 Therefore, under these circumstances we think the findings of the district court that the jurisdiction of the Board had not been invoked is not dispositive of the case. The question whether the Board has a case actually requiring decision before it bears no relation to the question whether this suit concerns conduct arguably protected by the Act. The Board disposes of its cases by a variety of different procedures. It is able to settle many disputes without formal action. It may decline action altogether, and if it does so that procedure may not mean that the subject matter is outside its jurisdiction. It may mean that it is being asked to take action against conduct that it finds to be protected. Looking to the underlying facts of the case in the light of Board action, we have no difficulty in holding that the union's statements in this case were at least arguably protected by the Act, although we make no final judgment on this question.[5] It follows that federal labor legislation has preempted regulation of the union's conduct, and the state court's order is of no force and effect. We now pass on to the second question, which concerns the effect of the anti-injunction statute on the power of the federal courts to grant the relief requested in this case.
 
 II. THE ANTI-INJUNCTION STATUTE
 
 18
 In addition to its holding that the union's conduct did not invoke the exclusive jurisdiction of the NLRB, the district court found in the anti-injunction statute, 28 U.S.C. § 2283 (1964), another reason for denying relief. That statute prohibits a federal court from enjoining proceedings in a state court, except where an injunction is necessary to preserve the jurisdiction of the federal courts or where an express statutory exception gives the federal courts the power to enjoin state proceedings. The statute is an enactment of the principle of comity between the state and federal systems. Recently, the Supreme Court has interpreted it in the labor context, and it has reaffirmed the strictness of the prohibition it creates. Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 1970, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234.
 
 
 19
 It is a principle of statutory construction, however, that legislation will not be presumed to impair the powers of the sovereign unless it affirmatively appears that it was the intent of the legislature to have it do so. Thus it is settled law that the prohibition of the anti-injunction statute does not apply to the Government of the United States. Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L. Ed.2d 267; United States v. Wood, 5th Cir. 1961, 295 F.2d 772; Sobol v. Perez, E.D.La.1965, 289 F.Supp. 392. As the Supreme Court said in Leiter Minerals, "The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, alone." Furthermore, it stands to reason that the United States Government, having enacted section 2283 for purposes it found sufficient, can be expected to weigh federal interests against those purposes on its own, and there is not the need for an anti-injunction statute that there is in the case of litigation between private parties.
 
 
 20
 The district court in fact held that "the `private party' prohibition of Section 2283 is not applicable to the Board." It then went on, however, to consider whether the case was an "extraordinary" one "warranting the issuance of an injunction against the State court proceedings." The thrust of the court's reasoning, in holding that the case was not extraordinary enough to warrant relief, was that the possibility of interference with the jurisdiction of the Board was conjectural since the controversy had not been brought before the Board for formal decision.
 
 
 21
 Although the district court quite evidently considered the case carefully and extensively, we disagree with this reasoning. In the first place, the jurisdiction of the Board was invoked by Roywood before the proceedings in the state court began. Even more importantly, however, we think the impact of national labor legislation cannot be confined to those cases in which the Board had undertaken proceedings, whether formal or informal. As we have already indicated, refusal by the Board to take action may mean that it views the conduct it is being asked to act against as protected by law. Thus an injunction by a state court interfering with arguably protected conduct may pose dangers of conflict with the federal scheme of regulation irrespective of whether the Board is hearing a formal controversy at the time. In such a case, the Board is entitled to sue and entitled upon proving its case to an injunction, not merely to protect its jurisdiction over a particular controversy but to safeguard the integrity of the national labor laws. When the Board so sues, it need not fit its case into one of the confining exceptions of section 2283, nor need it bear the heavy burden of showing its case "exceptional" in immediate impact between the parties to the dispute. It sues not as a private party but as an agency of the United States Government charged with administering the national labor laws, and its judgment that there is sufficient danger to those laws to warrant an injunction is entitled to great weight.
 
 
 22
 We should emphasize that we have not been asked to decide, and do not decide, whether the union's conduct in this case is in fact protected by law. There may be a conflict between the Board's refusal to complain against the union's conduct and the district court's award of damages based upon that conduct in the section 303 case that preceded the case at bar. All that we have decided is that the union's conduct is arguably protected and that the Board, upon application to the district court, was entitled to an injunction against the state court proceeding, which threatened to add a third side to the controversy. The judgment is reversed and the case remanded to the district court with directions to issue the injunction.
 
 
 23
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Roywood Corp. v. Radio Broadcast Technicians etc. Union, S.D.Ala.1968, 290 F. Supp. 1008. The court held that the picketing was not related to a primary dispute because its object was to force recognition less than one year after a representation election had resulted in rejection of the union, and this object is illegal. It held that the union's publicity campaign was not truthful because some evidence indicated its untruthfulness and the union failed to come forward with affirmative evidence of truthfulnessBut cf. note 5 infra and accompanying text.
 
 
 [2]
 We cannot agree with the reasoning advanced by Roywood to the effect that the Regional Director's decision may have reflected a judgment that the union's conduct, since it was charged to be libelous, was a mere "peripheral concern" of the national labor laws and hence outside the Board's jurisdiction. It is true that the national labor laws are not concerned with libel as such. In this case, however, the conduct of the union would have been an unfair labor practice unless it was truthful and conversely if truthful would have been protected, and the Regional Director would have to consider its truthfulness in order to employ the reasoning Roywood imputes to him
 
 
 [3]
 E. g., Weber v. Anheuser-Busch, Inc. 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L. Ed. 546 (State restraint of trade statute may not be applied to strike); Local No. 438 Construction etc. Laborers v. Curry, 1963, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed. 2d 514 (State right to work law may not prohibit peaceful picketing); Local No. 207 etc. Iron Workers v. Perko, 1963, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (State law cannot make illegal union's successful demand that employer discharge workers); Liner v. Jafco, Inc., 1964, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (State law cannot prohibit peaceful picketing).
 
 
 [4]
 Libel is a mere "peripheral concern" of the national labor laws. Linn v. United Plant Guard Workers, 1966, 383 U.S. 53, 61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582But see note 2 supra.
 
 
 [5]
 An arguable case may be made out that Roywood "forced its technicians out on strike" by the mere chronology of events, since the strike did occur and Roywood evidently took advantage of its existence to replace the strikers. The chronology also arguably supports the statement that Roywood had employed "union-busting" tactics even though the words, as might be expected, are emotional. The union's plea "Please Help Us Maintain Working Conditions" can be regarded as arguably protected if it is viewed not as a statement that Roywood maintained inferior working conditions but as an implication that sub-union working conditions might occur in the future if Roywood's employees rejected the union or if union stations were forced to compete with Roywood. The reference to "unfair competition" does not impute unfair trade practices or fraud to Roywood, even though these meanings are usually associated with the words when they are used as a term of art. The import of the reference, taken in context, is that union stations may be forced to compete with WALA-TV's non-union operation in a manner disadvantageous to the union stations since the latter may have to allocate more of their resources to wages, improvement of working conditions and labor relations in general. In considering these statements, we need not evaluate the accuracy of the district court's holding in the section 303 suit that the statements were not truthful, since that judgment is not before us for reviewCf. Linn v. United Plant Guard Workers, supra, 383 U.S. at 60-63, 86 S.Ct. at 662-663.