## 44719. UNION CAMP CORPORATION v. SAVANNAH BUILDING TRADES COUNCIL et al.
### (361 SE2d 178)

GREGORY, Justice.

This case involves a labor dispute. In early February 1987, the business representatives of several labor unions located in the Savannah area met with a representative of appellant Union Camp to express their displeasure with Union Camp's decision to award a labor contract to an "open-shop" contractor. When Union Camp refused to

---

reconsider its decision with regard to this contract, appellee Local 474 Operating Engineers Union (Operating Engineers) gave notice to Union Camp of its intention to picket the job site. The evidence shows that on February 17, 1987, the date the job with the open-shop contractor began, members of the Operating Engineers picketed the various entrances to the Union Camp plant. The following day a representative of the Operating Engineers met with Union Camp officials and reached an agreement to limit picketing to the gate used by the open-shop contractor, referred to by the parties in this appeal as "Gate 5." They further agreed that no more than five pickets would be placed at this gate. The record indicates this agreement has been complied with. At the same time the Operating Engineers rented an empty lot across the street from Gate 5 of Union Camp to accommodate union members and sympathizers. During this time members of appellee Local 709, Iron Workers Union, distributed handbills to persons travelling on Allen Boulevard which the trial court found is "heavily travelled as an entrance and exit from Union Camp." In the following days there were several confrontations between union members and the open-shop employees hired by Union Camp, some of which resulted in violent acts. Union Camp filed this application for interlocutory injunction.[1] The trial court entered an order partially granting the relief sought, and Union Camp appeals.

1. In the first three errors enumerated, Union Camp complains of the trial court's failure to make findings of fact and conclusions of law as required by OCGA § 9-11-52 (a) with regard to the order dismissing various union defendants from this case, and contends that the judgment ought to be voided on account of this. While in appropriate cases we have remanded for findings of fact and conclusions of law, see, *Hanson v. First State Bank &c.*, 254 Ga. 235 (327 SE2d 730) (1985), we know of no authority, and Union Camp cites none to us, for voiding the judgment.

2. Certain authority of the courts of this state to intervene in a labor dispute is set out in OCGA §§ 34-6-2 through 34-6-7. These statutes prohibit, inter alia, the use of violence and intimidation to prevent one from engaging in employment at a place where a labor dispute exists, OCGA § 34-6-3, and the use of mass picketing to obstruct traffic at the site of a labor dispute, OCGA § 34-6-5. The courts of this state have the authority to issue injunctions for violations of these code sections. *Fleming v. Terminal Transport Co.*, 222 Ga. 583 (151 SE2d 137) (1966). However, where the complaint makes out an arguable violation of the National Labor Relations Act, state courts

---

[1] Union Camp has also filed charges of unfair labor practices with the National Labor Relations Board regarding issues arising out of picketing and alleged secondary boycotts in this case over which the state courts have no jurisdiction.

have no jurisdiction to issue an injunction or to adjudicate the controversy. *Local No. 438, Construction &c. Union v. Curry,* 371 U. S. 542, 546 (83 SC 531, 9 LE2d 514) (1963).

The trial court's order states that [appellees] "shall be permitted to have one *neutral observer* at each gate to Union Camp." (Emphasis in original.) The trial court's order does not define what is meant by a "neutral observer," nor does it state the purpose of placing a "neutral observer" at each gate. Union Camp argues that the issue of whether "neutral observers" may be placed at gates other than Gate 5 lies within the preemptive jurisdiction of the National Labor Relations Board. With this we must agree.

Union Camp argues that the "neutral observer" to be placed at each gate is actually a picket, thereby creating a secondary boycott in violation of 29 USC § 158 (b) (4). See *Getreu, Regional Director, on Behalf of the NLRB v. Local Union 1347, Int. Brotherhood of Electrical Workers, AFL-CIO,* 66 L.R.R.M. 2084 (U. S. Dis. Ct., S.D. Ohio) (1967). The appellee unions argue that placing a "neutral observer" at each gate is not violative of 29 USC § 158 because it is essential the unions be permitted to monitor whether the open-shop employer is using Union Camp gates other than Gate 5. Because the activity in question is arguably subject to § 8 of the National Labor Relations Act, the courts must defer to the jurisdiction of the NLRB. *San Diego Building Trades Council v. Garmon,* 359 U. S. 236 (79 SC 773, 3 LE2d 775) (1959); *Curry,* supra, 371 U. S. at 546. Therefore, the trial court erred in ordering that a "neutral observer shall be placed at each gate to Union Camp."

3. The trial court ruled that the appellee unions may use the rented lot across from Gate 5 as a "staging location" for pickets, but "for no other gate, and [it] shall not be used for mass picketing. [Appellees] shall have no more than 20 persons on said lot at any one time." The trial court prohibited the use of signs on this lot as well as enjoined those present on the lot from yelling or directing abusive language at persons passing by, and from obstructing the flow of traffic at the lot location. Further, the trial court's order sets out in detail the procedure to be used for relieving those picketing at Gate 5 or delivering messages or food to them.

Union Camp complains that the trial court abused its discretion in permitting any activity to take place on the "staging lot," because of the "potential" for violence and hazard to traffic. We do not agree. Rather, we find the conditions placed on the "staging lot" by the trial court are designed to control the potential for violence and traffic impediments, and we will not disturb this ruling on appeal.

4. Last, Union Camp argues that the trial court's ruling that appellees may maintain a maximum of four pickets at Gate 5 is error as a matter of law because the evidence shows that this number of pick-

ets will create a threat to the public safety. The evidence in this regard is in conflict. There is, however, evidence to support the trial court's determination that a maximum of four pickets at Gate 5 will not constitute a threat to the public safety or order. Furthermore we note that on February 18, 1987, Union Camp agreed to permit more pickets at Gate 5 than are allowed by the trial court's order.

*Judgment affirmed in part, and reversed in part. All the Justices concur.*

DECIDED OCTOBER 21, 1987.

*Bouhan, Williams & Levy, M. Tyus Butler, Jr.,* for appellant.

*Downing, McAleer & Gaskin, James E. McAleer, Jr., Mark H. Johnson, Jacobs & Langford, Joseph Jacobs, James T. Langford, Sparkman, Harris & Moore, Charles L. Sparkman, Stanley E. Harris, Jr., James P. Gerard,* for appellees.