**KERR–McGEE CHEMICAL CORPORATION, Plaintiff–Appellant,**

v.

**CITY OF WEST CHICAGO, et al., Defendants–Appellees.**

No. 90–1622.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1990.

Decided Sept. 20, 1990.

---

John C. Berghoff, Jr., Thomas P. Healy, Jr., Howard J. Roin, Mayer, Brown & Platt, Chicago, Ill., Peter J. Nickles, Richard Meserve, Herbert Estreicher, Covington & Burling, Washington, D.C., for plaintiff-appellant.

Joseph V. Karaganis, Ellen L. Zisook, James D. Brusslan, Karaganis & White, Chicago, Ill., for City of West Chicago, Paul Netzel.

J. Jerome Sisul, Asst. Atty. Gen., Douglas J. Rathe, William D. Seith, Joseph Williams, Richard Verkler, Chicago, Ill., for Neil F. Hartigan, James E. Ryan and Bernard Killian.

John T. Stahr, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for amicus curiae U.S.

John F. Cordes, Jr., Steven F. Crockett, E. Leo Slaggie, U.S. Nuclear Regulatory Com'n., Washington, D.C., for amicus curiae Nuclear Regulatory Com'n.

Before CUMMINGS, EASTERBROOK, and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

This is the latest appeal in a string of litigation concerning the planned disposal of radioactive waste at the Kerr–McGee Chemical Corporation's Rare Earths Facility, located partly within the corporate limits of the City of West Chicago (the "City") in DuPage County, Illinois. Kerr–McGee appeals from the district court's denial of its motion for a preliminary injunction. The injunction would have barred the City from requiring Kerr–McGee to obtain approval under a municipal ordinance for certain aspects of the construction of a disposal cell for radioactive material. Because the relevant federal statute does not preempt a municipal ordinance that on its face targets only health and safety hazards unrelated to hazards created by radiation, the judgment of the district court is affirmed.

I.

From 1932 to 1973, Kerr–McGee and its predecessor companies used the property in question to recover thorium from radioactive ores. One by-product of this process was waste material referred to as tailings, which were stored on the site. In 1978, five years after Kerr–McGee shut down the processing operation, the federal Nuclear Regulatory Commission (NRC) issued an order requiring Kerr–McGee to submit a plan for decommissioning the facility, covering proper disposal of the tailings. The following year Kerr–McGee responded with a plan that called for encapsulating the tailings in an earthen disposal "cell" on the same property. Estimated to cost approximately $23 million to construct and maintain, this project would involve covering the tailings with layers of clay, rock, and soil eight feet high. The structure is alleged to be suitable for use for the next 1,000 years.

In 1982, this Court considered a suit brought by the City against Kerr–McGee in state court and removed to federal court on diversity grounds. *Illinois v. Kerr–McGee Chem. Corp.*, 677 F.2d 571, 578 n. 13 (1982), certiorari denied, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618. The suit charged Kerr–McGee with maintenance of a public nuisance, unlawful condemnation of public property, and violation of state and city regulations. *Id.* at 574. As discussed more fully below, the Court held that alleged violations that did not directly involve radiation hazards were not

preempted by federal law and the case was remanded for findings on the degree to which various alleged violations involved radiation hazards. *Id.* at 582–584.

In 1983 the NRC issued a "final" environmental statement on the decommissioning of the facility, which outlined eight alternative proposals and recommended that the wastes be securely stored on the site for an indeterminate time, perhaps only temporarily. The NRC then published a notice for an opportunity for hearing on the licensing action recommended in the environmental statement. The State of Illinois requested a hearing. The Atomic Safety Licensing Board (the "licensing board"), an adjudicatory body that decides contested issues within the NRC's jurisdiction, ordered the NRC staff to prepare a supplement to the environmental statement addressing the State's concerns.

This was where matters stood when this Court considered a suit brought by the owners of two parcels of residential property, whose backyards abut the Kerr–McGee site, on a variety of tort theories under Illinois law. *Brown v. Kerr–McGee Chem. Corp.,* 767 F.2d 1234 (1985), certiorari denied, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604. The neighbors requested an injunction ordering that a mixture of radioactive and non-radioactive wastes on the site be removed and stored elsewhere. The Court held that the request was preempted by various provisions of the Atomic Energy Act of 1954 as amended (the "AEA"), 42 U.S.C. §§ 2011–2286i, since Congress has given the NRC exclusive authority to regulate the radiation hazards of the by-products of nuclear processing facilities. *Id.* at 1240–1243. Because the radioactive and non-radioactive materials sought to be moved were "inextricably intermixed," the federal scheme would have been frustrated if all of the wastes were ordered moved. *Id.* at 1240–1241.[1]

In the meantime, in response to concerns raised by Illinois officials before the licens-

ing board, the NRC staff was preparing a supplement to the environmental statement. As part of its effort to convince the NRC of its position in favor of on-site disposal, Kerr–McGee prepared and submitted a 12–volume engineering report that described the design and construction of the cell. The report included discussion of methods that could be used to control such problems as erosion, runoff, and dust.

The NRC staff concluded in April 1989 that the Kerr–McGee plan for on-site disposal, with certain modifications, was the "preferred course of action" to a number of off-site (including out of state) alternatives. In February 1990 the licensing board found that Kerr–McGee's on-site disposal plan, with certain conditions, would satisfy regulatory requirements. A revised NRC license was issued. The licensing board decision is now under appeal by the City and State before the NRC's Atomic Safety and Licensing Appeal Board. That appeal board has denied motions by the City and State to stay the revised license "in large part because Kerr–McGee's site work over the next few months would be quite limited and, for the most part, confined to work that would have to be done even if the wastes were ultimately disposed of offsite" (NRC Br. at 8 n. 9).

On March 5, 1990, a Kerr–McGee official informed the City's mayor that it would begin work on its "stabilization program" the next day. The City responded to this announcement by informing Kerr–McGee that it planned to hold Kerr–McGee to compliance with the Erosion and Sedimentation Regulations contained in Article IV of the West Chicago Code. The relevant provisions of the Code involve such issues as dust control and erosion problems. The next day City officials posted a stop work notice at the site, stating that all persons ignoring the notice "are liable to arrest."

Kerr–McGee officials and workers did not test that threat, nor did they apply for

1. *Brown* was decided with the benefit of two then recently issued opinions of the Supreme Court that interpreted the scope of federal and state authority under the AEA. *Pacific Gas & Electric Co. v. State Energy Resources Conserva-*

*tion & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 and *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443.

a permit. Instead on March 7, 1990, Kerr–McGee filed its complaint for declaratory and injunctive relief in federal court against the City. The next day Kerr–McGee moved for a temporary restraining order and for a preliminary injunction.

The district court denied the request for a preliminary injunction after finding that Kerr–McGee had not made a minimal showing of some likelihood of success on the merits. The court relied heavily upon a finding that Kerr–McGee, in its license request, represented to the NRC that its disposal plans would conform strictly to the City's Code. *Kerr–McGee Chemical Corp. v. City of West Chicago*, 732 F.Supp. 922, 927 (N.D.Ill.1990). Judge Holderman found that the City's enforcement of its Code could not conflict with federal law on the ground that the NRC's amendment of the Kerr–McGee license explicitly required compliance with the Code. *Id.* at 927–928. The district court further found that Kerr–McGee has adequate remedies at law, that it has failed to demonstrate that it will suffer irreparable harm if the preliminary injunction is not granted, and that the public interest would not be served if the injunction were granted. *Id.* at 928–929.

II.

This appeal does not present questions concerning the cost or safety ramifications of on-site stabilization of tailings in West Chicago or the validity of the NRC licensing scheme. It requires only the direct application of two prior holdings of this Court involving preemption questions that have arisen in this ongoing contest between Kerr–McGee and State and local officials.

A.

■ The City asserts that this case is not ripe, since Kerr–McGee has not sought to comply with the City's Code. Since the City, if given the opportunity, might find Kerr–McGee's plans in complete compliance with the City's Code, the City submits that Kerr–McGee's suit is premature.

The Supreme Court has addressed this issue in a very similar context. *Pacific Gas & Electric Co. v. State Energy Re-sources Conservation and Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752. In *Pacific Gas*, two utility companies filed suit against a California state commission, claiming that provisions of a California law were preempted by the AEA. The Court held that one state law provision was ripe for review and another was not. *Id.* at 200, 103 S.Ct. at 1720. The provision found ripe for review imposed a moratorium on certification of new nuclear plants until the state commission found, and informed the California legislature, that a federally approved method of nuclear waste disposal existed. Since the commission had not made the required findings, the provision barred the certification of any new nuclear plants in California. The Court decided that the following factors weighed in favor of ripeness: (1) the question of preemption was entirely legal and did not need to await California's decision regarding appropriate disposal alternatives; (2) postponement would likely work substantial hardship on the utilities; (3) delayed resolution of the preemption issue could frustrate a goal of the AEA to promote commercial development of atomic energy. *Id.* at 201–202, 103 S.Ct. at 1720–1721. The provision found not ripe for review involved interim storage of radioactive waste. It required the state commission to determine the adequacy of nuclear plants' spent fuel storage capacity on a case-by-case basis. The Court found that this provision was not ripe because it was impossible to determine whether the state commission would ever find a plant's storage capacity to be inadequate and because uncertainty surrounding this provision was unlikely to affect business planning by the utilities. *Id.* at 203, 103 S.Ct. at 1721.

The obstacle presented to Kerr–McGee by the City's Code is more analogous to the first California provision than the second. Kerr–McGee requests an injunction and declaratory judgment that the City may not apply any aspect of its Code; it does not object only to application of a particular regulation. Kerr–McGee's disposal plans are directly affected since the City has made it quite clear that it intends to en-

force its Code through means that include arrest, presumably without regard to the status of federal regulatory approval. Under such circumstances, *Pacific Gas* strongly suggests that the question whether Kerr–McGee is legally entitled to a complete preemption defense is ripe for consideration. See also *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 107 S.Ct. 1419, 94 L.Ed.2d 577; *Construction Laborers v. Curry*, 371 U.S. 542, 550, 83 S.Ct. 531, 536, 9 L.Ed.2d 514; *First Iowa Hydro–Electric Coop. v. Federal Power Comm'n*, 328 U.S. 152, 164–167, 66 S.Ct. 906, 911–913, 90 L.Ed. 1143.

## B.

■ Kerr–McGee also clears the second set of barriers the City attempts to erect to its suit, the Anti–Injunction Act (AIA), 28 U.S.C. § 2283, and the doctrine of abstention identified with *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. Both the City and the State, in their briefs filed in this appeal, acknowledge that the ruling of the district court involved only the City's permit process and did not include within its ambit any state court proceedings or rights granted by state court judgments. Therefore, the AIA is inapplicable, since that statute applies only to "proceedings in a State court." This appeal does not implicate the goal of Section 2283 "to prevent needless friction between state and federal courts," *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs.*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234, or the related federalism and comity concerns addressed in *Younger* and its progeny.

## C.

■ There is no question that the federal courts have subject matter jurisdiction to consider claims such as the one Kerr–McGee makes. As our colleague Judge Fairchild recently explained in writing for the First Circuit, the Supreme Court has explicitly ruled out objections to preemption claims of the type at issue here on subject matter jurisdiction grounds because these claims are deemed to raise questions "arising under" the Constitution. *Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 29–31 (1990) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490). It is true that the City's Code is completely "radiation neutral," but Kerr–McGee's position is that *any* attempt to apply the Code would preempt the AEA. This is enough to create subject matter jurisdiction under Section 1331. See *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939.

We turn then to the cause of action under which Kerr–McGee may sue. The AEA does not expressly authorize licensees to enforce the terms of their licenses through suits in the federal courts. Kerr–McGee's complaint purports to create a valid cause of action on the grounds that the AEA, which establishes a comprehensive scheme for the federal regulation of atomic energy, creates an implied private right of action for members of the nuclear industry. We do not need to decide today whether a private cause of action is implied in the AEA because we find that Kerr–McGee may rely upon 42 U.S.C. § 1983 to enforce the federal "rights, privileges or immunities" found in the AEA itself. See *Playboy Enterprises*, 906 F.2d at 31–33 (holding that 47 U.S.C. § 558, a provision of the Cable Communications Policy Act of 1984, provides an "immunity" enforceable through Section 1983 in an action brought to establish the preemptive force of that provision).

Kerr–McGee did not attempt to rely upon Section 1983 to enforce any rights directly under the Supremacy Clause, a door firmly closed by the Supreme Court. *Golden State Transit Corp. v. City of Los Angeles*, — U.S. —, 110 S.Ct. 444, 449, 107 L.Ed.2d 420. That does not, however, preclude the use of Section 1983 to enforce the provisions of the AEA, including those mandating an exclusive federal regulatory scheme for radiation hazards. The test recently reiterated by the Supreme Court to determine whether a federal statute creates a federal right enforceable under Section 1983 is whether the statute was intend-

ed to benefit the putative plaintiff, does not reflect a mere "congressional preference" that falls short of a mandate, and is not too vague to allow for competent judicial enforcement. *Wilder v. Virginia Hosp. Assoc.,* — U.S. ——, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455.

As the Supreme Court has explained, the AEA arose as part of a unique federal project to develop atomic power first for weapons and then for peaceful purposes. *Pacific Gas,* 461 U.S. at 206–207, 103 S.Ct. at 1723–1724. Congress determined that safety threats arising from nuclear facilities would be regulated through an exclusively federal scheme, *id.* at 207–212, 103 S.Ct. at 1723–1726; 42 U.S.C. § 2021, in part because federal regulators are considered better qualified than any state counterparts. See *Silkwood,* 464 U.S. at 250–251, 104 S.Ct. at 622–623. Thus the AEA on its face gives the nuclear industry the right to answer only to the federal government regarding the utility and safety of the radiological aspects of nuclear facilities. The legislative history refers to a congressional determination that federal resources and support for private efforts would be necessary for "optimum progress, efficiency, and economy in this area of atomic endeavor" (H.R.Rep. No. 2181, 83d Cong., 2d Sess. at 9 (1954)). The strong preemptive thrust of the statute suggests that Congress intended to benefit the nuclear industry to the extent that the industry would be shielded from any local interference with radiological aspects of nuclear facilities.

Congress did not merely "nudge" state and local governments in establishing the preemptive authority of the AEA; Congress created a binding obligation. Congress followed this course with the knowledge that the Supremacy Clause maintains a hierarchy of laws that must be respected by all adjudicators sworn to uphold the Constitution. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23; *Alleghany*

*Corp. v. Haase,* 896 F.2d 1046, 1054 (7th Cir.1990) (Easterbrook, J., concurring). It would be peculiar to find an intent on the part of Congress to create a comprehensive and exclusive federal scheme to encourage the safe and productive uses of nuclear energy, see, *e.g., Illinois v. Kerr–McGee,* 677 F.2d at 580–581, 582; *Brown,* 767 F.2d at 1240, 1242, and yet not find that the preemptive power of that scheme could be enforced in the federal courts as a "federal right."

Finally, there is nothing vague about the federal right that Kerr–McGee seeks to enforce. The Supreme Court in *Pacific Gas* did not find a preemption inquiry under the AEA to be too amorphous or vague for judicial resolution, nor did this Court in its prior opinions regarding this ongoing dispute.

In sum, we hold that in this case Kerr–McGee has stated a cause of action cognizable by the federal courts.

### D.

 Resolution of the preemption question here requires straightforward application of the holdings this Court has already made in *Illinois v. Kerr–McGee* and *Brown:*

(1) The AEA, in particular the savings provision found in 42 U.S.C. § 2021(k),[2] as well as the relevant sections of its legislative history, NRC regulations, and case law, reveals that the NRC has exclusive authority to regulate radiation hazards associated with the materials and activities covered by the AEA, but states and local agencies retain the right to regulate non-radiation hazards. *Illinois v. Kerr–McGee,* 677 F.2d at 580–581. Though the AEA clearly has broad preemptive effect, Congress has allowed for concurrent local regulation of non-radiological aspects of peaceful applications of nuclear power.

---

**2.** Section 274(k) of the AEA, 42 U.S.C. § 2021(k), provides in relevant part:

**§ 2021. Cooperation with States**

**(k) State regulation of activities for certain purposes**

Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.

(2) Where it can be established that "an *actual* conflict exists" between the NRC's authority and the City's regulation, the NRC must prevail. *Id.* at 582 (emphasis in original).

(3) When radiation and non-radiation hazards are inseparable, federal law preempts state or local attempts to force removal of the wastes. *Brown,* 767 F.2d at 1240.

(4) Under various provisions of federal law, including 42 U.S.C. § 2014(e)(2), the NRC has complete authority under the AEA to determine whether on-site encapsulation is the best method for storing the material, and that determination may not be obstructed by the City. *Id.* at 1242.

The holding in *Illinois v. Kerr–McGee* that the AEA does not displace local regulations that do not involve or directly interfere with federal regulation of radiation hazards takes on even more weight in light of discussion and analysis in the Supreme Court's recent, unanimous holding that the AEA does not preempt a state law tort claim for intentional infliction of emotional distress. *English v. General Elec. Co.,* — U.S. ——, 110 S.Ct. 2270, 110 L.Ed.2d 65. The Court stated the following test: "[F]or a state law to fall within the preempted zone, it must have some direct and substantial effect on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels." *Id.* at 2278.

This test would of course preclude the City from challenging the finding of the licensing board that on-site disposal is appropriate because it minimizes the risks of harm due to nuclear hazards. Yet Kerr–

McGee concedes that West Chicago's Code "on its face concerns matters that are unrelated to radiological hazards" (Pl.'s Br. at 40).[3] Without venturing to find out how the City would apply that "unrelated" language by requesting a City permit, Kerr–McGee has filed suit in federal court asking for a determination that some applications of the Code would in fact present an obstacle to NRC regulation. Kerr–McGee's argument is based upon the fact that the NRC also reserves the right to scrutinize such matters as erosion, run-off, dust, and sediment. But as we held in *Illinois v. Kerr–McGee* and *Brown,* the fact that the NRC's comprehensive licensing scheme touches on these areas does not mean that the City is precluded from visiting those same areas of concern so long as the City does not directly interfere with the regulation of radiological hazards. Section 2021(k), allowing for continued authority of state and local agencies in the regulation of hazards other than radiation, would be drained of all meaning if local regulation were limited only to topics that are never mentioned in federal regulations.[4]

The NRC, in its *amicus* brief in this case, agrees with the City that there has not yet been a demonstrated conflict between the City's permit request and federal law. The NRC makes the logical point that if the City attaches to its permit requirements "conditions so altering the disposal project as to amount to a frustration of the NRC's preferred method of disposal," then preemption would be evident (NRC Br. at 17 n. 13). This scenario of the City imposing requirements tantamount to a rejection of the NRC's preference for on-site disposal

---

**3.** The NRC takes the same position. "These regulations are of long standing and do not purport to regulate radiological hazards." NRC Br. at 10.

**4.** Kerr–McGee points out that one criterion of an NRC regulation governing tailings refers to "the *nonradiological hazards* associated with the wastes in planning and implementing closure," requiring licensees to minimize "post-closure escape of *nonradiological hazardous constituents,* leachate, contaminated rainwater, or waste decomposition products to the ground or surface waters or to the atmosphere." (Pl.'s Br. at 44 n. 22, citing 10 C.F.R. part 40, App. A, Criterion 6)

(emphasis added). This same regulation lists more than 400 "hazardous constituents" by chemical name (acetonitrile through zinc phosphide). Kerr–McGee would presumably find regulation of each of these chemicals at the Kerr–McGee site by the City completely preempted. Kerr–McGee's interpretation would erase the clearly expressed intent of Congress that local governments be allowed to address non-radiological hazards. See *Illinois v. Kerr–McGee,* 677 F.2d at 580 n. 17 (power of NRC to protect public from non-radiological hazards under 42 U.S.C. § 2114(a)(1) not incompatible with 42 U.S.C. § 2021(k)).

describes the situation dealt with by this Court in *Brown*.

In *Brown* we held that the NRC's licensing of the West Chicago site, should that be sustained in the course of the pending federal administrative procedure, is part of a federal nuclear regulatory scheme that preempts local controls. *Brown*, 767 F.2d at 1242. The City urges that we overrule *Brown* and find that the NRC has given Kerr–McGee only "permission" to dispose of the tailings on-site, so that the City's use of its Code to force Kerr–McGee to dispose of the tailings elsewhere would not interfere with a federal scheme (City Br. at 21–23, 25–28). As we explained in *Brown*, that approach would give the City a veto power over the NRC's licensing scheme in contravention of express congressional intent.

The City incorrectly argues that *Brown* is inconsistent with *Pacific Gas*. The Supreme Court held in *Pacific Gas* that the NRC's decision, after considering safety concerns, to continue to license new reactors despite uncertainty about a method of disposal for high-level radioactive waste did not preempt California's law, based on economic concerns, imposing a moratorium on certification of new nuclear plants until the state determined that a federally approved method of nuclear waste disposal existed. *Pacific Gas*, 461 U.S. at 218–219, 103 S.Ct. at 1729–1730. That is entirely distinguishable from this case. Here the NRC is completing a lengthy review and appeals process focused directly on the risk of radiation contamination presented by Kerr–McGee's project, a project which was undertaken in response to the NRC's demand for a stabilization program for the tailings now stored on the West Chicago site.

Despite this restraint on the City, Kerr–McGee asks that we unmask the City's true motivation in requiring Kerr–McGee to obtain City approval. Given the City's well-documented opposition to on-site encapsulation and what Kerr–McGee calls a Not–In–My–Back–Yard attitude to the project, Kerr–McGee asserts that the City cannot pretend that it will treat Kerr–McGee's project as just another local development.

It is not clear how heavily legislative purpose is to be weighed in determining preemption. *English*, 110 S.Ct. at 2278 n. 7; *Pacific Gas*, 461 U.S. at 197–198, 216, 103 S.Ct. at 1718–1719, 1728. But it would require us to pile one speculation upon another to find that the City plans to use the Code to frustrate the NRC licensing program. The Code itself is "radiation neutral." The City has not applied its Code, so it has not even had the chance to do so in a manner intended to subvert the federal licensing scheme. The mere exercise of jurisdiction by the City does not create an irreconcilable conflict with the objectives of federal law.

The NRC and Kerr–McGee agree that references to the City's regulations in the NRC license are intended "to be enforced by federal means" and that Kerr–McGee is required by the NRC only to "meet the substantive parameters concerning the control of radioactive dust and runoff, and the like" (NRC Br. at 17–18; Pl.'s Reply Br. at 2). Indeed the NRC may lack authority under the various relevant federal statutes to incorporate a generally worded local standard into an NRC license in the way the City claims it has. Thus Kerr–McGee did not bind itself to submit its plans to the City through its representations to the NRC. Nevertheless it remains to be seen whether the City's attempt to apply its Code to the Kerr–McGee project will in any way frustrate the federal statutory scheme and interfere with Kerr–McGee's rights under its federal license. Kerr–McGee's claim is ripe because the City is prepared to apply its Code immediately in a way that may affect the project. It would be improper, however, to prejudge the City's actions on the grounds that the Supremacy Clause might be violated at some future date. The City does indeed have the power to say "no" to aspects of the project that violate the Code, if they do not directly involve radiation hazards (including those "inextricably intermixed" with non-radiation hazards) and are not selected for scrutiny by the City merely to delay or frustrate the project as a whole.

### III.

For the foregoing reasons, the judgment of the district court denying Kerr–McGee's motion for injunctive relief is affirmed.