THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, *et al.*, Plaintiffs-Appellees, v. KERR-McGEE CHEMICAL CORPORATION, Defendant-Appellant.

Second District   No. 2—90—0577

Opinion filed March 5, 1991.

116

John C. Berghoff, Thomas P. Healy, and Mark R. Ter Molen, all of Mayer, Brown & Platt, of Chicago, and Herbert Estreicher and Peter J. Nickles, both of Covington & Burling, of Washington, D.C. (Richard A. Meserve, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Richard A. Verkler, of Robert F. Van Epps, Ltd., of Elmhurst (Robert J. Ruiz, Solicitor General, and Michelle D. Jordan, Douglas J. Rathe, William D. Seith, Joseph Williams, and Matthew J. Dunn, Assistant Attorneys General, of Chicago, of counsel), for appellee People *ex rel.* Neil F. Hartigan.

James E. Ryan, State's Attorney, of Wheaton (Robert K. Kilander, George Sotos, and Carole Doris, Assistant State's Attorneys, of counsel), for appellee People *ex rel.* James E. Ryan.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, the People of the State of Illinois (the State), sought and received a preliminary injunction to bar the defendant, Kerr-McGee Chemical Corporation (Kerr-McGee), from "construction of the waste contaminate facility proposed for the Kerr-McGee West Chicago site." That injunction is to remain in effect, basically, until Kerr-McGee complies with State environmental "construction" permit requirements. Kerr-McGee brings this appeal from the preliminary injunction. We affirm.

The facts underlying this action are as follows. In 1967, Kerr-McGee acquired the West Chicago facility at issue. The facility extracted thorium and other materials from radioactive ores. The extraction process left sandy, earthlike by-product wastes that were deposited on the West Chicago property. The radioactive wastes are subject to regulation by the United States Nuclear Regulatory Commission (NRC), under the Federal Atomic Energy Act of 1954 (AEA) (42 U.S.C. §2011 *et seq.* (1982)).

Kerr-McGee operated the facility under an NRC license until 1973. In 1978, the NRC asked Kerr-McGee to submit a plan for decommissioning the facility. The planned disposition of the by-product waste on the West Chicago property underlies this case.

In 1979, Kerr-McGee proposed to the NRC that the by-product waste should be stored in a "disposal cell" (the cell) to be constructed on the site. The State and the City of West Chicago (the City) intervened in the proceedings, objecting that the on-site cell would be a health hazard. In 1983, the NRC issued its environmental statement,

determining that construction of the West Chicago cell was the "preferred" decommissioning plan.

Following the State's and the City's subsequent challenges, the NRC convened an Atomic Safety and Licensing Board (the Licensing Board). The Licensing Board required the NRC to prepare a supplemental environmental statement. The supplemental statement, issued in 1989, also recommended construction of the West Chicago cell. According to Kerr-McGee's engineering report, specifications for the cell provided for 1,000 watertight years. The supplemental environmental statement also concluded that the on-site encapsulation plan was the "preferred course of action," and it recommended that construction should proceed.

After issuance of both the 1983 environmental statement and the 1989 supplemental statement, the State raised several challenges before the NRC, attacking the Kerr-McGee plan. The State's contentions indicated particular concern for airborne and water contamination from the cell.

In November 1989, the Licensing Board granted partial summary judgment against the State's challenges and ordered a hearing on the cell's impact on groundwater. Following that full hearing, the Licensing Board granted Kerr-McGee summary judgment on all remaining issues. Thereafter, on February 23, 1990, the NRC issued Kerr-McGee a revised license to proceed with construction of the on-site disposal cell. After issuance of that license, the State and City requested a stay pending appeal. The NRC appeals board denied the stay, reasoning that Kerr-McGee's planned activities for 1990 would be performed regardless of whether the cell was constructed.

On March 5, 1990, Kerr-McGee notified the City that it intended to commence with NRC-authorized activities at the site. The City issued a "stop work" order asserting that Kerr-McGee was beginning construction of the cell. It demanded that Kerr-McGee comply with the City code's "Erosion and Sedimentation Regulations." In Federal court, Kerr-McGee sought a temporary restraining order (TRO) and preliminary injunction against the City. That action eventually came before the Seventh Circuit Court of Appeals, which affirmed the district court's denial of injunctive relief for Kerr-McGee.

THIS CASE

On March 14, 1990, the day before the scheduled initial hearing on Kerr-McGee's Federal court motions for a TRO and preliminary injunction against the City, the State filed the two-count Du Page County complaint that underlies this case. It sought a TRO and pre-

liminary injunction barring Kerr-McGee from constructing the cell. The State relied on Kerr-McGee's failure to apply for two State environmental permits: an air "emissions" permit (35 Ill. Adm. Code §201.142 (1985)), and a "waste water discharge permit" (35 Ill. Adm. Code §309.202 (1985)).

The trial judge granted an *ex parte* TRO and, following hearing of Kerr-McGee's motion to dismiss and the State's motion for preliminary injunction, the court granted the preliminary injunction. Kerr-McGee brought this appeal. In summary, Kerr-McGee's arguments on appeal are as follows: (1) that the injunction is both overly broad and premature as the State has not shown that Kerr-McGee has violated or is about to violate the Illinois Environmental Protection Act (the Act) at the West Chicago site; (2) that the permits demanded do not apply to the cell; (3) that any State permit requirements are preempted by Federal law; (4) that the State is collaterally estopped from raising the issues here; and (5) that the cell and its construction pose no public health or environmental threat.

Kerr-McGee's first two arguments on appeal are so interrelated that we choose to consolidate them. The first issue we address, then, is whether the trial court's injunction is both overly broad and premature because it bars activities beyond the scope of the State's regulations. Kerr-McGee refers to evidence that it did not intend to begin construction of the cell in 1990. According to Kerr-McGee, the court-enjoined activities are to be undertaken regardless of whether a disposal cell is built on the site and they are not activities subject to construction permits that the State seeks to require.

In proceedings before the Licensing Board, Kerr-McGee had outlined its plan for 1990 activities at the site. Kerr-McGee proposed therein to remove trees and roots from the disposal site; it would shred small pieces and incinerate large ones. Some debris near concrete slabs on the site would be "repackaged or stockpiled as appropriate." Also, Kerr-McGee would excavate contaminated soil lying outside the perimeter of the cell waste line and, perhaps, fill the excavated areas with clean materials; excavated materials would be stockpiled for eventual placement in the cell. Additionally, Kerr-McGee proposed to excavate sediment in three ponds as well as "soft-sediments" nearby. The excavated areas might be backfilled with clean materials, and the excavated material would be stockpiled on the site for eventual placement in the cell. Lastly, in parallel with those site activities, Kerr-McGee would perform detailed engineering work necessary to allow commencement of cell construction in the spring of 1991. The engineering project was estimated to cost between $250,000 and

$500,000 during 1990; other activities proposed for 1990 were estimated to cost $450,000.

■ The Illinois Environmental Protection Act (the Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*) requires State "construction" permits prior to construction or installation of any facility that will cause, threaten, or be capable of causing or contributing to air or water pollution covered by Illinois pollution regulations. (Ill. Rev. Stat. 1989, ch. 111½, pars. 1039(a), 1009(a), (b), 1012(a), (b).) State air pollution regulations define "construction," in relevant part, as "commencement of on-site fabrication, erection or installation of an emission source." (35 Ill. Adm. Code §201.102 (1985).) Similarly, water pollution regulations, in relevant part, define "construction" as "commencement of on-site application, erection, or installation of *** a wastewater source." 35 Ill. Adm. Code §301.265 (1985).

Under Illinois air pollution regulations, an "emission source" is any equipment or facility capable of emitting specified air contaminants to the atmosphere. (35 Ill. Adm. Code §201.102 (1985).) Under Illinois water pollution regulations, a "wastewater source" is defined as any equipment, facility or other source which directly or indirectly discharges any combination of treated or untreated sewage, industrial or other waste, or any admixed land runoff to Illinois waters. 35 Ill. Adm. Code §§301.425, 301.430 (1985).

In the trial court, the State presented testimony of Terry Sweitzer, the manager of permits of the air pollution division of the Illinois Environmental Protection Agency (the IEPA). Mr. Sweitzer testified that, in his opinion, the picking up and stockpiling of soil and sludge, and site grading and excavating to the bottom of the disposal cell, activities outlined in Kerr-McGee's 1990 plans, constituted "construction" under air pollution regulations. Mr. Sweitzer further opined that construction activities at the site which emit particulate matter and lead, specified air contaminants under IEPA regulations, make the facility an "emissions source" subject to IEPA air pollution permit requirements.

Thomas McSwiggin, the manager of water pollution permits for the IEPA, testified that he had reviewed the supplemental environmental statement and Kerr-McGee's disposal cell plans and determined that the Kerr-McGee disposal site at West Chicago would have an impact on the groundwaters of Illinois. McSwiggin further testified that he would consider the construction of the containment cell, or the containment cell itself, to be a "wastewater source" having an impact upon Illinois groundwaters and requiring a permit under IEPA water pollution regulations. When asked to consider the activities pre-

paring a portion of the site for cell construction—excavating and placing materials in the cell, covering the cell with earth, and restoring the site with drainage control and vegetation—Mr. McSwiggin opined that the Kerr-McGee facility would have an impact upon Illinois waters.

In reviewing the evidence, the trial court found that Kerr-McGee's plans for 1990 were "clearly and logically the commencement of construction as defined by the Act and Regulations." The court found that Kerr-McGee's proposed conduct was, thus, to be enjoined for nonpreempted regulation by State permits.

■ ■ Under section 42(e) of the Act, the State may seek an injunction to restrain violations of the Act. (Ill. Rev. Stat. 1989, ch. 111½, par. 1042(e).) The purpose of granting a preliminary injunction is to prevent a threatened wrong or further perpetration of injury until the merits of the case can be determined; it is granted in order to preserve the status quo of the parties. (*Stasica v. Hannon* (1979), 70 Ill. App. 3d 785, 787.) In the case of an injunction under section 42(e), the trial court has no discretion to refuse an injunction to enforce the terms of the Act. *People v. Van Tran Electric Corp.* (1987), 152 Ill. App. 3d 175, 184.

■ We find no basis for reversal in this case. The court heard testimony from IEPA officials that even Kerr-McGee's preliminary activities would create air emissions of lead and particulates and be a source of wastewater that are subject to IEPA regulations for "construction" activity. Their comments were not merely premature expressions of concern directed at the remote possibility of some future activity at the site. (*Cf. Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.* (1971), 132 Ill. App. 2d 833.) Further, the agency officials' interpretation of IEPA regulations, addressing both the construction of the cell and the completed cell, were not shown to be plainly erroneous or fraught with inconsistency; consequently, it was entitled to great weight. *Dean Foods Co. v. Illinois Pollution Control Board* (1986), 143 Ill. App. 3d 322, 329.

■ We find that the State sufficiently alleged and showed Kerr-McGee's impending violation of the Act's requirement of construction permits under these circumstances. We find no reason to disturb the court's conclusion that Kerr-McGee's activities should be enjoined subject to IEPA construction permit requirements. The Act's critical definitions of "construction," "emission source" and "wastewater source" are each broadly written, and they logically comprise the site plans, both short and long term. The trial court's findings of imminent "construction" of an "emission" and "wastewater" source

threatening great harm and without adequate legal remedy for the State are sufficiently supported in the record. See *People v. Van Tran Electric Corp.* (1987), 152 Ill. App. 3d 175, 184.

Kerr-McGee's second argument on appeal is that IEPA permit requirements, as applied to the cell, are preempted by Federal law. According to Kerr-McGee's analysis, which was briefed prior to the NRC's partial transfer of regulatory authority to the State (see 55 C.F.R. 214, at 46, 591 (Nov. 5, 1990)), State regulation relating to nonradiological matters can be applied to sites subject to Federal regulation of nuclear safety concerns only if State regulation does not significantly interfere with matters within the province of the NRC. According to Kerr-McGee, the State purports here to exercise regulatory control over precisely the same matters that were reviewed by the NRC, and the State's claims concern matters that are subject to exclusive Federal control.

■ It is clearly recognized that the AEA gave the NRC exclusive authority to regulate the radiation hazards of nuclear processing by-products. (42 U.S.C. §2011 *et seq.* (1988); *Brown v. Kerr-McGee Chemical Corp.* (7th Cir. 1985), 767 F.2d 1234, 1240-43.) State and local agencies, however, retain the right to regulate nonradiation hazards. (*Illinois v. Kerr-McGee Chemical Corp.* (7th Cir. 1982), 677 F.2d 571, 580-81.) On the other hand, State laws regulating nonradiation hazards are still preempted if an "actual conflict" exists between them and Federal law. See *Brown,* 767 F.2d at 1240-42.

Our analysis of whether preemption should defeat the State's claims in this case is aided by the recent Seventh Circuit decision in *Kerr-McGee Chemical Corp. v. City of West Chicago* (7th Cir. 1990), 914 F.2d 820. In that appeal, the court analyzed whether the city's demand for city code compliance by Kerr-McGee was preempted by the AEA. There, considering arguments identical or analogous to those presented in this case, the Seventh Circuit found no preemption.

According to the Seventh Circuit, because the city had not yet applied its city code, it had not even had the chance to do so in a manner intended to subvert the Federal licensing scheme; the city's mere exercise of jurisdiction did not create an irreconcilable conflict with Federal law objectives or interfere with Kerr-McGee's rights under its Federal license. (914 F.2d at 827.) The Seventh Circuit found, ultimately, that the city had the power to reject aspects of Kerr-McGee's cell construction project if those aspects did not directly involve radiation hazards or hazards "inextricably intermixed" with radiation hazards, and if the city objections were not aimed merely at delaying or frustrating the Kerr-McGee project. 914 F.2d at 827.

■■ Likewise, without reliance on the NRC's recent transfer of its authority, in this case, we find that the State's efforts to oversee activities at the site are not preempted. Here, as in the recent Seventh Circuit case, the State has only taken the preliminary action of asserting its right to require environmental permits that address nonradiological issues. The State has focused its efforts at lead and particulate air emissions as well as nonradiological groundwater contamination. Also, as in the recent Seventh Circuit case *Kerr-McGee v. City of West Chicago*, the State has not even had the chance to apply its environmental regulations in a manner intended to subvert the Federal licensing scheme.

Additionally, we observe that in an important factual sense, this case is unlike *Brown v. Kerr-McGee Chemical Corp.* (7th Cir. 1985), 767 F.2d 1234, 1240-43, upon which Kerr-McGee places great weight. There, the plaintiffs sought a State injunction to move the wastes at issue to another site. Although that injunction was based upon nonradiological regulation, it clearly would have prevented the NRC from choosing a radiological disposal site selected by NRC staff; it, thus, was preempted for conflict with Federal law. The injunction here, on the other hand, is like that sought by the city in *Kerr-McGee v. City of West Chicago*, apparently directed towards regulatory measures not clearly in conflict with NRC actions. We find no demonstration that the State's mere requirement that Kerr-McGee apply for applicable nonradiological construction permits stands as an obstacle to accomplishment of the full Federal purposes at the West Chicago site.

Kerr-McGee's third major argument on appeal is that the State is barred by the doctrine of collateral estoppel from relitigating issues relating to the disposal cell. According to Kerr-McGee, the NRC through its Licensing Board has carefully addressed and resolved the issues upon which the State's arguments for requiring permits are based. According to Kerr-McGee, the NRC determination should be given preclusive effect.

■■ ■ A State court may be bound, under the principles of collateral estoppel, by the decision of a regulatory agency; however, among other factors necessarily preliminary to application of the collateral estoppel doctrine is that the previously determined issues are identical to the issues on which estoppel is sought. (*Crot v. Byrne* (N.D. Ill. 1986), 646 F. Supp. 1245, 1257.) Here, the trial court found, in relevant part, that Kerr-McGee had not established sufficient identity of issues. We agree.

On appeal, Kerr-McGee reiterates that the Licensing Board considered concerns about dust control and the possibility that constitu-

ents in the leachate from the cell would result in groundwater contamination. As we read the record, the previous NRC proceedings generally considered the factors of air and water discharges in concluding that construction of the West Chicago cell presented only minimal threats and was the best alternative for disposal of the radiological materials at issue. However, although the NRC's consideration certainly was related to the concerns which the State seeks to address in its quest for construction permit compliance, we have not been shown that the particular concerns forwarded by the applicable Illinois air- and water-quality regulations were specifically decided by the prior proceedings. Because collateral estoppel requires *identity* of issues, we find that the doctrine is not applicable in this case.

■■ Kerr-McGee's final argument is that the cell and its construction pose no threat to public health or the environment so that the public interest will not be served in imposing the State permit requirements on the cell. Rather, according to Kerr-McGee, the public interest will best be served by implementing the plan approved by the NRC. The State responds briefly that at this stage of the litigation, whether the cell will have an actual impact on the environment is not determinative.

We agree with the State. As we have found, the State has sufficiently established that the cell and its construction constitute a "wastewater source" and an "emission source" under circumstances requiring a permit for the commencement of "construction" activity. We are aware of no authority or factual material in the record demonstrating a reason for us to disturb the court's order that Kerr-McGee comply with the corresponding State permit requirements. If Kerr-McGee is correct that its plan poses no threat, properly followed State permit procedures will not long delay federally approved action.

Based on the foregoing, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

REINHARD, P.J., and INGLIS, J., concur.