UNDER SEAL, Plaintiff–Appellee,

v.

UNDER SEAL, Defendant–Appellant.

Under Seal, Plaintiff–Appellee,

v.

Under Seal, Defendant–Appellant.

Nos. 02–1683, 02–1684.

United States Court of Appeals,
Fourth Circuit.

Argued: Jan. 24, 2003.

Decided: April 14, 2003.

**ARGUED:** W. Neil Eggleston, Howrey, Simon, Arnold & White, L.L.P., Washington, D.C., for Appellants. Jamie M. Bennett, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Candace N. Beck, Howrey, Simon, Arnold & White, L.L.P., Washington, D.C.; Carl S. Rauh, Alan Kriegel, Alexander W. Powell, Jr., Skadden, Arps, Slate, Meagher & Flom, L.L.P., Washington, D.C., for Appellants. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, which Judge TRAXLER joined. Judge DIANA GRIBBON MOTZ wrote an opinion concurring in the judgement.

## OPINION

LUTTIG, Circuit Judge:

Appellants, two corporations who participate in the National Flood Insurance Program ("NFIP"), object to a district court order unsealing a False Claims Act ("FCA") complaint brought against them by the government as intervenor in a previously sealed complaint brought under the FCA's *qui tam* provision. Finding no error in the district court's exercise of discretion in unsealing the record, we affirm.

### I.

In 2000, an unidentified party filed a *qui tam* action, as relator, under the FCA against the appellants for allegedly wrongful insurance payments they made under the NFIP. The action was filed under seal, pursuant to the terms of the FCA's *qui tam* provision, which reads as follows:

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. . . .

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government . . . The complaint shall be filed *in camera*, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. . . .

(3) The Government may, for good cause shown, move the court for extensions of the time during which the com-

plaint remains under seal under paragraph (2). . . .

(4) Before the expiration of the 60–day period or any extensions obtained under paragraph (3), the Government shall—

(A) proceed with the action . . . ; or

(B) notify the court that it declines to take over the action

. . . .

. . . .

31 U.S.C. § 3730(b). The relator's action lay fallow as the government extended its investigative period. Then, on January 8, 2002, the government notified appellants that it would intervene in the suit and proceed against them.

Before the government filed an intervening complaint, the appellants moved to compel the government to arbitrate the controversy with them, as required by the Subsidy Arrangement that governs participation in the NFIP. *See* 42 C.F.R. Ch. 1, Pt. 62, App. A (2001). Shortly thereafter, the government filed its intervening complaint with the district court, along with a motion to unseal the action. On June 3, 2002, the court issued an order (1) compelling arbitration, (2) staying the government's complaint, and (3) unsealing the action.

The court stayed the effect of its unsealing order for ten days in order to allow appellants to take an appeal to this court. Appellants did appeal, and a motions panel of this court stayed the unsealing order pending our disposition.

### II.

As an initial matter, there is a significant question as to whether we have jurisdiction to hear this appeal. The government contends that the appeal is interlocutory, and therefore foreclosed from our review by 28 U.S.C. § 1291 (providing the court of appeals with jur-

isdiction to hear appeals only "from [ ] *final decisions* of the district courts"). Appellants, on the other hand, argue that the district court's order is a collateral order, reviewable under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The binding effect of our precedent compels us to conclude that the district court's order unsealing the record is appealable.

## A.

Our analysis of the collateral order doctrine begins with the twist, uncommon in this circuit, that our precedent sets forth two different standards for determining whether a district court order qualifies as a collateral order.

The parties approach the collateral order analysis principally via our decision in *James v. Jacobson,* 6 F.3d 233, 239 (4th Cir.1993). Citing *James,* along with *Taylor v. Nelson,* 788 F.2d 220, 224 (4th Cir. 1986), they both proceed on the assumption that the district court's order unsealing the record must meet *four* criteria to qualify for *Cohen* collateral appealability. They say the order must (1) conclusively determine the question, (2) resolve an important question independent of the merits, (3) be effectively unreviewable on appeal from final judgment, and (4) present a serious and unsettled question on appeal. Elsewhere in our precedent, however, this last factor, the fourth "factor," is not applied, and the first three factors are alone determinative of appealability. *See, e.g., Hopkins v. Prince George's County,* 309 F.3d 224 (4th Cir.2002).

*Cohen v. Beneficial Industrial Loan Corp.* first laid the framework for the collateral order doctrine. There, the Supreme Court held collateral orders appealable because they:

finally determine claims of right separable from, and collateral to, rights asserted in the action, [are] too important to be denied review and [are] too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. 337 U.S. at 546. Since *Cohen,* the Court has described and/or applied the collateral order analysis at least twenty-nine times in majority opinions. *In every one of those instances, save one, the Court either identified or both identified and applied the three factors recited in Cohen.*[1] And, in numerous of those cases

---

[1] *Compare Cunningham v. Hamilton County,* 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), *Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), *Swint v. Chambers County Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), *Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989), *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), *Van Cauwenberghe v.* *Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), *United States v. Hollywood Motor Car Co., Inc.,* 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982), *Firestone Tire & Rubber Co. v. Risjord,*

the Court *explicitly* denominated its test as a three-factor, three pronged, or three part test.[2] The twenty-eight uniform opinions—identifying the collateral order test as having *three factors*—sandwich the lone opinion, *Nixon v. Fitzgerald,* in which the Court asserted that the test includes the *fourth* "factor."[3] On the few other occasions on which the Supreme Court has noted the "serious and unsettled" factor in its opinions, the Court has noted the "factor" *as a circuit rule.* That is, the Court there has noted that a particular circuit has applied the fourth "factor," not that the "factor" is

required by Supreme Court precedent. *See, e.g., Gulfstream Aerospace Corp.,* 485 U.S. at 291, 108 S.Ct. 1133 (Scalia, J., concurring) ("I note that today's result could also be reached by application of *the rule adopted by the First Circuit,* that to come within the *Cohen* exception the issue on appeal must involve an important and unsettled question of controlling law ..." (emphasis added)); *McDonald v. Smith,* 472 U.S. 479, 482 n. 3, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (noting *our* circuit's application of the fourth "factor").[4]

---

449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), *Federal Trade Com'n v. Standard Oil Co. of Ca.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), *National Socialist Party of America v. Village of Skokie,* 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977), *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), *Local No. 438 Const. and General Laborers' Union, AFL–CIO v. Curry,* 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963), *and Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), *with Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (asserting that the *Cohen* test includes the fourth "factor" without examining the Court's contrary precedent).

**2.** *See, e.g., Digital Equip. Corp.; Lauro Lines s.r.l.; Van Cauwenberghe; Gulfstream Aerospace Corp.; Mitchell; Richardson.*

**3.** The concurring opinion notes that in *Eisen* and *Quackenbush* the Court articulated the collateral order test as having two and four factors, respectively. *See post* at 489. A close reading of those articulations, however, reveals that *both* cases simply repackage *Cohen's three* factors in different dress. Thus, in *Eisen,* the Court bundled *Cohen's* second and third factors into a single "second" fac-

tor. And in *Quackenbush,* the Court divided *Cohen's* second factor into two factors, its "second" and "fourth" factors.

**4.** The concurring opinion suggests that *Hohn v. United States,* 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), ought also be included in our tabulation of Supreme Court decisions *describing and/or applying* the collateral order test, *see post* at 487. We do not include them, however, for the simple reason that neither describes and/or applies the collateral order doctrine.

As to the first, *Hohn,* it involved no collateral order issue at all, and merely recited the holding of *Nixon v. Fitzgerald,* along with other holdings on different doctrinal matters, in order to illustrate that Court precedent foreclosed the conclusion that "a request to proceed before a court of appeals should be regarded as a threshold inquiry separate from the merits," *Hohn,* 524 U.S. at 246, 118 S.Ct. 1969. Obviously, we agree with *Hohn's* recitation of *Nixon's* holding. But we do not agree that the Court, in reciting *Nixon's* holding for purposes entirely unrelated to conducting a collateral order inquiry, can be said there to have described the collateral order doctrine in the sense that we mean it, that is, as describing the doctrine in order to enable its direct application.

As to the second, *Brady,* the language at issue is found in the facts section, in a footnote. That footnote begins: "Neither party suggests that the decision below is not a *final judgment* [.]" 373 U.S. at 85 n. 1, 83 S.Ct.

Because the Court's most recent pronouncement and virtually all of its other opinions establish that the collateral order test is a three factor test, we now understand the Supreme Court's collateral order test to be such, and, by implication, we conclude that the fourth "factor" is not part of the test. *See Cunningham v. Hamilton County,* 527 U.S. 198, 202, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) ("[T]he collateral order doctrine [ ] provides that certain orders may be appealed, notwithstanding the absence of final judgment, . . . when they are [1] conclusive, . . . [2] resolve important questions separate from the merits, and [3] are effectively unreviewable on appeal from the final judgment in the underlying action." (citing *Swint v. Chambers County Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (citing *Cohen* ))).

In determining that the Supreme Court's collateral order test is a three factor test we are not only consistent with the Court's most recent pronouncement, but also with the overwhelming majority of all its pronouncements on the subject. Furthermore, our conclusion in this regard is consistent with the Court's earliest pronouncement on the matter, *see Swift & Co. Packers,* and with its seminal pronouncement in *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), in which it first adopted the term "collateral order," *see id.* at 657, 97 S.Ct. 2034.

In *Abney,* the Court made abundantly clear through its detailed analysis that un-

der *Cohen*'s holding only three factors govern the determination of whether a court order is an appealable collateral order:

> [In *Cohen* ], the Court identified several factors which, in its view, rendered the District Court's order a "final decision" within the statute's meaning. *First,* the District Court's order had fully disposed of the question of the state security statute's applicability in federal court; in no sense, did it leave the matter "open, unfinished or inconclusive." *Second,* the decision was not simply a "step toward final disposition of the merits of the case (which would) be merged in final judgment"; rather, it resolved an issue completely collateral to the cause of action asserted. *Finally,* the decision had involved an important right which would be "lost, probably irreparably," if review had to await final judgment; hence, to be effective, appellate review in that special limited setting had to be immediate.

*Abney,* 431 U.S. at 658, 97 S.Ct. 2034 (emphasis added) (citations omitted). The *Abney* Court did not so much as mention *Cohen*'s note that the issue there presented a "serious and unsettled question."

Our circuit began applying the fourth "factor" in *Bever v. Gilbertson,* 724 F.2d 1083, 1085 (4th Cir.1984) (citing *Cohen* ) (abrogated on different grounds by *Young v. Lynch,* 846 F.2d 960 (4th Cir.1988)). There, we noted that *Cohen* described the order being reviewed as "present[ing] a

1194 (emphasis added). From that beginning, it proceeds to cite *Cohen only* for the proposition that the serious and unsettled factor is relevant to the conclusion that "no attack on the reviewability of the lower court's judgment could be successfully maintained." It nowhere suggests that a *collateral order (i.e.,* an order that represents a final decision, though not a final judgment) is at issue. In line with the case's posture, all the

other precedent this footnote relies on are pre-*Cohen* decisions. The only post-*Cohen* collateral order decision to which it cites, *Local No. 438 Const. and General Laborers' Union,* it cites as a "cf.", that is, as a case that provides *parallel,* not controlling, reasoning. Clearly then, *Brady,* in this footnote in its fact section, does not contain an instructive description and/or application of the *collateral order* inquiry.

serious and unsettled question." Since *Bever*, we have, *in fourteen instances*, treated that notation as a fourth element to the collateral order analysis, *see, e.g., Taylor v. Nelson*, 788 F.2d 220, 224 (4th Cir.1986) (citing *Bever*). Those fourteen instances compare with *one-thousand-plus cases* over the same period of time in which we did not apply that fourth "factor" when applying *Cohen's* collateral order doctrine. From *In re: Investigation*, 563 F.2d 652 (4th Cir.1977), to *Miller v. Simmons*, 814 F.2d 962 (4th Cir.1987), to *Hopkins v. Prince George's County*, 309 F.3d 224 (4th Cir.2002), we have at all other times hewed to the Supreme Court's prescribed analysis, applying *Cohen's* three factors.

As a panel of the full court, we cannot overrule prior decisions of the court, panel or *en banc*, and we are bound to apply principles decided by prior decisions of the court to the questions we address. But here, where we confront two different rules governing the same question, we are left no option but to choose from between our differing precedents. We would rather not hold this judicial license. However, until such time as the *en banc* court addresses itself to the jurisprudential dilemma presented by these different precedents, such is the only course available to us.

Sitting *en banc* in *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir.1997), we applied the *Cohen* collateral appealability test without any reference to the fourth "factor." And we have never otherwise applied the fourth "factor" while sitting *en banc*. Though *Jenkins* did not claim to overrule *Bever*, and though *after Jenkins* a panel again reinserted the fourth "factor" into our *Cohen* doctrine, *see Eagle Energy, Inc. v. Secretary of Labor*, 240 F.3d 319 (4th Cir.2001), we believe that *Jenkins*, along with the numerous similar panel applications of *Cohen*, is grounds for concluding that our circuit's preference in practice is to hew strictly to *Cohen's* three factor test. To the extent that any thought has even been given to the issue, this preference may be attributable to the twin facts that, to do otherwise, would not only conflict necessarily with Supreme Court authority but also lead to doctrinally indefensible results. As to the first of these putative reasons, imposition of an additional element conflicts necessarily with the Supreme Court's standard, since the elements of its collateral order test establish a *minimum* threshold for our jurisdiction. And as to the second reason, by way of example, if one may not immediately appeal unless the issue is unsettled, then he would be foreclosed from interlocutory review of an order which, under established precedent, would clearly be violative of the Double Jeopardy Clause. For these reasons, we choose not to apply the fourth "factor" here, a decision that, happily, keeps us as true as possible to our prior circuit practice.

### B.

The government pitched its argument against appealability of the unsealing order solely on the contention that the order did not satisfy the fourth "factor." It conceded (insofar as one can "concede" a jurisdictional issue) that the "other" three *Cohen* appealability factors were met. Obviously, the government's position takes on significance in light of our conclusion that the fourth "factor" is not applicable. But, irrespective of whether we would agree with the government's assessment of the three factors, our decision in *James v. Jacobson*, 6 F.3d at 237, compels the conclusion that the order in question here is a collateral order. *See id.* (holding that a district court order denying anonymity to the parties is a collateral order).

In *James*, the subject of the district court's order was a matter of discretion, involving the court's interest in trial management. And it involved a determination as to whether the rights of public access to trial proceedings were outweighed by the parties' privacy rights. Here, in identical fashion, the subject of the court's order is a matter of discretion, founded on the court's interest in trial management. And it equally involves a determination of whether rights of public access are outweighed by the parties' privacy rights. Furthermore, in both cases the privacy concern of the objecting parties is that the court's order will result in their being publicly identified with the action. On these similarities, we cannot avoid the conclusion that *James* applies, nor can we but hold

that the order in this case is likewise appealable.[5]

### III.

■ Turning to the merits, we review the district court's order to unseal the record for an abuse of discretion. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (concluding that decisions as to court record access are best left to the trial court's discretion since that court can best evaluate whether one of the three established exceptions to the presumption of public access—(1) where disclosure may be used to gratify private spite or promote public scandal, (2) where disclosed records may serve as reservoirs of libelous statements for press consumption, or (3) where disclosure might reveal

---

5. While we faithfully apply *James'* principle in light of the similarities of the cases, we are skeptical of the government's concession, and equally of *James'* conclusion, that the district court order satisfies the third *Cohen-Abney* factor—the likely irreparable loss of an important right. The third factor—the likely irreparable loss of important rights *if review has to await final judgment*—would not appear to be implicated by district court orders on motions to seal court records or proceedings because, unique to this realm, denial of collateral review does not result in the consequence that review must then await final judgment. Rather, parties dissatisfied with sealing or unsealing orders have at their disposal what is in fact the preferred vehicle for review: petitions for mandamus. Petitions for mandamus have long been recognized as the appropriate vehicle for challenges to cloture and unsealing orders. *Cf. Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989) ("Mandamus, not appeal, is the preferred method of review for orders restricting press activity related to criminal proceedings."); *In re: Washington Post Co.*, 807 F.2d 383, 388 (4th Cir.1986) (treating an appeal by a non-party to a district court order sealing documents in a criminal case as a petition for mandamus); *Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi v. Martin*, 556 F.2d 706 (4th Cir.1977)

(noting that "mandamus is the proper remedy to request the relief prayed for here" where appellant, on an interlocutory appeal, challenges a district court protective order); *see also United States v. Gonzales*, 150 F.3d 1246 (10th Cir.1998) (treating an interlocutory appeal from a district court's order to seal the record as a petition for mandamus, in light of the fact that mandamus is the proper vehicle for such review).

Mandamus relief, though limited to circumstances where the petitioner's "right to issuance of the writ is clear and indisputable," *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), suffices to protect the parties' rights here. As *James'* discussion of the two varieties of "discretionary rulings" makes clear, *see* 6 F.3d at 238, a *properly made* discretionary ruling does not implicate important rights of the parties. Only an *improperly made* discretionary ruling implicates the parties' rights, either substantive or procedural. Because this distinction, on which the availability of collateral appeal rests, can only be made *after* review, mandamus is instead appropriate. Requiring that review be had via mandamus would ensure that trials do not grind to a halt where a discretionary sealing judgment is properly made, while also ensuring the vindication of the important rights implicated by an improperly made sealing judgment.

trade secrets—creates a countervailing privacy right that supports sealing in light of the particular facts and circumstances of the case).

Appellants argue that the combined effect of the FCA's initial sealing of *qui tam* actions and the Subsidy Agreement's commitment of government suits against NFIP insurers to private arbitration, governed by the Federal Arbitration Act ("FAA"), work to create a substantial privacy interest for them that overcomes the public's right to access court documents. They also argue that to rule otherwise would be to "reward the government's improper conduct," Appellant's Br. at 10, which conduct they contend entails "prematurely seek[ing] to make its case public in contravention of the private arbitration protocol of the Subsidy Arrangement of the NFIP," *id.* at 10.

▮ In response, the government first argues, quite correctly, that the presumption in favor of public disclosure of court records can only be overcome by a significant countervailing interest. *See Rushford v. New Yorker*, 846 F.2d 249, 253 (4th Cir.1988). Secondly, it rightly points out that there is no bar on litigants filing pleadings in cases where arbitration is required, whether that filing is to challenge the scope of arbitration, preserve an action before a statute of limitations runs, or for another reason. *See, e.g., Long v. Silver*, 248 F.3d 309 (4th Cir.2001) (determining applicability of arbitration provision to non-signatory, and collecting cases of court consideration of arbitration related issues). Lastly, the government correctly notes that the FCA's purpose in initially sealing *qui tam* suits does not extend to the sealing appellants seek. *See Lujan v. Hughes Aircraft Co.*, 67 F.3d 242 (9th Cir.1995) (explaining that purpose of § 3730(b)(2)'s sealing provision is to allow the government to study and evaluate, out of public

view, the relator's information for possible intervention or overlapping criminal investigation). We add that neither the Subsidy Agreement nor the FAA requires that the parties maintain secrecy during arbitration. They only deny the public any right to access arbitration records. Where a party, of its own accord, places information in a public domain, it offends neither the regulatory nor the statutory regime.

These points, taken together, confirm that appellants have no privacy rights in the contents of the court record. Since the purpose of the FCA does not support *continued* sealing, and only justifies sealing in order that the government may investigate, appellants' reliance on that Act is misplaced. And, appellants cannot rely on either the Subsidy Arrangement or the FAA, as neither prohibits the government from placing its complaint against appellants in the public domain. Since appellants lack privacy rights to this information, and since there is no bar to filing court pleadings in connection with an arbitrated matter, the government's conduct cannot be characterized as "improper."

Unable to demonstrate any relevant privacy right, appellants fail to satisfy *Rushford*'s high standard and to overcome the public's right to access court documents. The district court's discretionary order unsealing the record is therefore not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

DIANA GRIBBON MOTZ, concurring:

I concur in the judgment and in much of the majority's rationale. I write separately in an effort to reconcile some of the collateral order precedent on the "serious

and unsettled question" factor and more fully explain why I believe this factor is not a collateral order requirement.

At the outset, it seems only fair to note that the conflict within the precedent of this circuit noted by the majority, *ante* at 481–482 and 483–484, undoubtedly stems from the disarray in Supreme Court precedent. Since establishing the collateral order doctrine more than fifty years ago in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the high court has not hewed to an entirely consistent approach.

In *Cohen* itself the Court stated the rationale for the collateral order doctrine as follows:

> [When a final judgment on the merits is issued] it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably.... This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred.... We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But *we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear* and the order involved only an exercise of discretion ... *appealability would present a different question.*

337 U.S. at 546–47, 69 S.Ct. 1221 (emphasis added). Thus, in the Court's seminal explication of the collateral order doctrine, it clearly attached some importance to the fact that the order before it "present[ed] a serious and unsettled question." *Id.*

Additionally, in four subsequent cases, the Court has mentioned the "serious and unsettled question" factor in discussing the collateral order doctrine. *See Brady v. Maryland*, 373 U.S. 83, 85 n. 1, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (stating as the very first factor, in explaining its rationale for finding the order before it appealable, that "the right to a trial on the issue of guilt ... presents a serious and unsettled question" (internal quotation marks and citation omitted)); *Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (stating that "[a]s an additional requirement, *Cohen* established that a collateral appeal of an interlocutory order must 'presen[t] a serious and unsettled question' "); *McDonald v. Smith*, 472 U.S. 479, 482 n. 3, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (noting without disapproval, in a case arising from the denial of a motion on the pleadings, that the Fourth Circuit had "accepted jurisdiction under the 'collateral order' doctrine," "[b]ecause petitioner raised a 'serious and unsettled question' "); *Hohn v. United States*, 524 U.S. 236, 246–47, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (describing without disapproval, the District of Columbia Circuit's summary dismissal of the interlocutory appeal in *Nixon v. Fitzgerald* for failure of the order "to satisfy th[e] threshold requirement" of presenting a " 'serious and unsettled question' of law sufficient to bring the case within the collateral order doctrine"); *see also Gulfstream Aerospace Corp. v. Mayacamas*, 485 U.S. 271, 292, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (Scalia, J., concurring) (noting "some support" in Supreme Court precedent for viewing "serious and unsettled question" as a factor under collateral order doctrine).

Given these cases, it is hardly surprising that several courts of appeals, including

ours, have on occasion concluded that whether an interlocutory order involved a "serious and unsettled question" was relevant in determining whether it was immediately appealable as a collateral order. *See, e.g., Chaves v. M/V Medina Star,* 47 F.3d 153, 155 (5th Cir.1995); *Banque Nordeurope S.A. v. Banker,* 970 F.2d 1129, 1131 (2d Cir.1992); *Jim Walter Res., Inc. v. Fed. Mine Safety & Health Review Com'n.,* 920 F.2d 738, 744–45 n. 3 (11th Cir.1990); *see also ante* at 481 – 482 and 483 – 484.

But the Supreme Court has never *held* an interlocutory order *not* to qualify as an immediately appealable collateral order because it did not involve a "serious and unsettled question." Furthermore, in the years that followed *Cohen,* the Court has considered the collateral order doctrine on "many occasions," *Gulfstream,* 485 U.S. at 276, 108 S.Ct. 1133, and the few cases mentioning a "serious and unsettled question" factor are mere drops in this sea of collateral order jurisprudence.

Very frequently the Court has applied the abbreviated, three-factor test (containing no mention of the "serious and unsettled question" factor), which it originally set forth in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978):

> the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal.

*See also Johnson v. Jones,* 515 U.S. 304, 310–11, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (quoting test with bracketed numbers indicating the three-factors, and noting that the Court "restated" the *Cohen* test in *Coopers & Lybrand* ); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144–45, 113 S.Ct. 684, 121 L.Ed.2d 605 (1992) (quoting test,

inserting bracketed numbers, and stating that "to come within" the *Cohen* rule an order must meet these factors); *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (quoting test and stating that "[t]o fall within the limited class of final collateral orders, an order" must meet these requirements); *Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 498, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1988) (quoting test and noting that the Court has "held that to fall within the *Cohen* exception an order must satisfy at least [these] three conditions"); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 522, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (quoting test and noting that "[t]he Court refined the 'collateral order' doctrine of *Cohen* in *Coopers & Lybrand* "); *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 431, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (quoting test and noting "an order must at a minimum satisfy [these] three conditions"); *Flanagan v. United States,* 465 U.S. 259, 265, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (same); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (quoting test and stating that *Coopers & Lybrand* had "recently defined this limited class of final 'collateral orders' in these terms"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 11, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting test and stating it "summarize[s]" "[t]he factors required").

In addition, as the majority demonstrates, *ante* at 481 – 482, even when the Court has not phrased the test in precisely this way, it has almost always applied a similar test that includes no "serious and unsettled question" factor. *See, e.g., Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). And often the Court has expressly denominated the governing test as a three-factor or

three-pronged test. *See ante* at 481–482. *But see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (characterizing *Cohen* as holding an "order appealable on *two* grounds": "[f]irst [the order] settled conclusively [a] claim" and "[s]econd, ... it concerned a collateral matter that would not be reviewed effectively on appeal from the final judgment" (emphasis added)); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (stating four requirements: collateral orders must [1] "conclusively determine a disputed question, that is [2] completely separate from the merits of the action, [3] effectively unreviewable on appeal from a final judgment, and [4] too important to be denied review." (internal quotation marks and citations omitted)).[1]

Moreover, mandating proof that an order involves a "serious and unsettled question" would seem to present new complications in the already murky and often criticized collateral order jurisprudence. *See, e.g.,* 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Proc.* § 3911.5 at 432, 438 (2d ed.1991) (noting "[t]he ambiguity of the Supreme Court's approach over time," on this issue and that "[t]he status of the serious and unsettled question aspect of collateral order doctrine thus remains uncertain"); Lloyd C. Anderson, *The Collateral Order Doctrine: A New 'Serbonian Boy' and Four Proposals,* 46 Drake L.Rev. 539 (1998). For example, it is unclear whether a question would have to be "serious" to the parties, or to society in general, or to the development of the law, or that seriousness should be determined in some other way. Precisely when a question no longer remains "unsettled" is

also unclear. Generally, we regard a published Court of Appeals opinion as settling a question within the circuit. *See, e.g., Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 271 n. 2 (4th Cir.2002) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court ...." (internal quotation marks and citation omitted)). But in *Nixon,* the District of Columbia Circuit had previously issued a published opinion on point but the Supreme Court found the question "unsettled" because the Supreme Court itself had "never so held." *Nixon,* 457 U.S. at 742, 102 S.Ct. 2690. Given these uncertainties, I think it unlikely that the Supreme Court intended, without greater explanation, to impose this factor as a collateral order requirement.

For all of these reasons, I agree that the "Supreme Court's collateral order test" does not contain a fourth factor requiring the interlocutory order to involve "a serious and unsettled question." *See ante* at 483. It seems to me that when discussing the "serious and unsettled" factor initially in *Cohen* itself, the Court was simply describing several features of the interlocutory order before it, which persuaded the Court that the order was immediately appealable. Thus, the *Cohen* Court noted the "serious and unsettled question" in an effort to pro-vide a full rationale for its holding, not as part of a multi-factor "test." In *Brady,* 373 U.S. at 85 n. 1, 83 S.Ct. 1194, the Court similarly found that the order before it included a "serious and unsettled question," without stating this as a collateral order requirement.

Nor did the Court in *McDonald,* 472 U.S. at 482 n. 3, 105 S.Ct. 2787, suggest that the "serious and unsettled question"

---

1. The Supreme Court has increasingly emphasized that the right asserted must be "important." *See, e.g., Digital Equip. Corp. v.*

*Desktop Direct, Inc.,* 511 U.S. 863, 878–79, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994).

constituted a necessary ingredient for a collateral order. The *McDonald* Court did not explain its own rationale for entertaining a case arising from a trial court's denial of a judgment on the pleadings, but merely noted that the court of appeals had "accepted jurisdiction under the 'collateral order' doctrine" on the theory that the "petitioner raised a 'serious and unsettled question.'" *Id.*

In *Nixon*, 457 U.S. at 742, 102 S.Ct. 2690, however, the Court did characterize the "serious and unsettled" factor as "an additional requirement," which *"Cohen* established." And in *Hohn*, 524 U.S. at 246–47, 118 S.Ct. 1969, the Court recently repeated *Nixon*'s characterization without disapproval. These cases do give me pause. However, the context of the *Nixon* Court's statement and the rationale for its holding on this issue seem to me to render it questionable to rely on this characterization as signaling establishment of a fourth factor.

In *Nixon*, 457 U.S. at 741, 102 S.Ct. 2690, the Supreme Court was reviewing an unpublished appellate order, apparently without a stated rationale, "dismiss[ing] summarily" the district court's denial of immunity to a former president and his aides. The *Nixon* Court thus surmised that the "Court of Appeals appears to have reasoned that petitioner's appeal lay outside the *Cohen* doctrine because it raised no 'serious and unsettled question'" since "[t]his argument was pressed by the respondent" on the basis of an earlier holding in a similar case by the Court of Appeals. *Id.* at 742–43, 102 S.Ct. 2690. If

we are correct as to the limits of the collateral order test, the *Nixon* Court could have summarily rejected this view. But, facing an appellate order issued without explanation, on a question of great public interest, it is hardly surprising that the Supreme Court instead determined to meet the issue head on. Moreover, the ease with which the *Nixon* Court could dispose of the "serious and unsettled question" argument perhaps contributed to its decision to follow this direct approach. Obviously, the Court found the argument meritless, quickly concluding that notwithstanding the court of appeals' earlier decision, the immunity question was unsettled because the Supreme Court itself had not resolved it. *Id.* at 743, 102 S.Ct. 2690.

Given this context and holding, I believe the fairest way to read *Nixon* is as a discussion of the "serious and unsettled question" which assumes, but does not decide, that it is a collateral order requirement. Moreover, in view of the extensive Supreme Court collateral order precedent post-dating *Nixon*, which I discuss above, I am satisfied that even if the Supreme Court in *Nixon* did intend to establish a fourth factor, it subsequently changed course.[2]

**2.** Finally, it is worth noting that even if there were a "serious and unsettled question" requirement, the order in this case would still be appealable under the Supreme Court's articulation of this requirement in *Nixon*, 457 U.S. at 743, 102 S.Ct. 2690. Because that case suggests that an issue remains unsettled until the Supreme Court itself has settled the

matter, and I am aware of no Supreme Court case that has definitively settled the issue of when courts may unseal the record of a previously sealed complaint brought under the False Claims Act's *qui tam* provision, the issue in this case remains "serious and unsettled."